Filed 7/17/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GREG DAGHER, | D065963 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00046812-CU-BC-CTL) |
| FORD MOTOR COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge. Affirmed in part and reversed in part with directions.

Rosner, Barry & Babbitt, Hallen D. Rosner, Arlyn L. Escalante; and Susan A. Yeck for Plaintiff and Appellant.

Wilson Turner Kosmo, Vickie E. Turner, Robert A. Shields, Robert K. Dixon; Dykema Gossett, John M. Thomas and Tamara A. Bush for Defendant and Respondent.

Plaintiff and appellant Greg Dagher (Plaintiff) sued defendant and respondent Ford Motor Company (Ford), alleging violations of the Song-Beverly Consumer Warranty Act (the Act). (Civ. Code, § 1790 et seq.; all further statutory references are to this code unless noted.) In 2009, Plaintiff bought a used Ford 2006 vehicle in a private

sale, then determined its engine needed substantial repairs. He obtained them by using Ford's transferable, unexpired express warranty that the private party sellers had originally been issued upon their purchase of the vehicle, new, from a Ford dealer. Plaintiff contends the warranty repairs attempted by the dealer were unsuccessful and he is entitled to the statutory remedies in the Act, the same as the original purchasers could have sought, including restitution, damages, and civil penalties. (§ 1793.2 [refund or replacement].)[1] Based on the remedial purposes of the Act, Plaintiff contends that this statutory right of action was transferred to him, along with ownership of the vehicle and its express warranty. (Com. Code, § 2313; *Jensen, supra,* 35 Cal.App.4th 112, 121-126 [Act contains protections and remedies for certain subsequent purchasers of new vehicles from dealers].)

In opposition, Ford sought summary judgment on the ground it had not failed to comply with any obligation owed to Plaintiff under the Act, because the available statutory remedies are restricted to aggrieved buyers of "consumer goods," chiefly new ones that are covered by express warranties. (Code Civ. Proc., § 437c.) This was a used vehicle that was not sold to Plaintiff by a dealer, and even though the express warranty was transferable, Ford contended that Plaintiff lacked standing to sue for additional statutory remedies under the Act. (*Martinez v. Kia Motors America, Inc.* (2011) 193

---

[1] Amendments to the Act in 1982 applied its "repair or replace" (or refund) provisions to "new motor vehicles" bought for personal use. (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 121-123 (*Jensen*) [portions of Act are known as the "Lemon Law"; also discussing additional amendments to definitions; see fn. 2, *post*].)

Cal.App.4th 187, 190-191 (*Martinez*) [plaintiff who purchased vehicle from dealership, which repossessed it, still qualified to seek the Act's remedies even though she did not continue to own vehicle].)  In arguing it is entitled to judgment as a matter of law, based on lack of coverage by the Act's provisions, Ford mainly relies on its definitions of terms in section 1791, subdivisions (b) ("buyer" of consumer goods), and (l) ("retail seller" engaged in the business of selling or leasing consumer goods to retail buyers).  (See pt. III, *post*.)

Along with opposing the summary judgment motion, Plaintiff filed a motion to amend the complaint to assert a new cause of action on the same facts, for breach of express warranty under the federal "lemon law," the Magnuson-Moss Warranty Act. (15 U.S.C. § 2301 et seq. (Magnuson-Moss); Code Civ. Proc., § 473.)  The trial court granted summary judgment and denied leave to file an amended complaint.

On appeal, Plaintiff argues the trial court erred because (1) even though the sellers were private parties, he qualifies as a buyer in a "retail" context within section 1791, the definitional section of the Act, due to his transferred express warranty rights; (2) when the sellers transferred to him the express warranty provisions, they also effectively assigned their rights or standing to sue Ford under the Act, for its additional remedies such as implied warranties; (3) the ruling against him "produced an absurd result that goes against the very nature of the Song-Beverly Act, a consumer protection statute"; (4) even if he lacks statutory qualifications under the Act, the trial court should have allowed him leave to amend the complaint to pursue a more limited federal consumer protection remedy under Magnuson-Moss (express warranty), on the same set of facts.

We reject Plaintiff's interpretations of the Act that would have allowed him standing to sue under it, and we affirm the summary judgment order. Finding that the trial court did not properly exercise its discretion on the amendment issue, we reverse that order and the resulting judgment, with directions to the trial court to allow further proceedings on amendment of the complaint as proposed.

FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Plaintiff purchased a used 2006 Ford F-350 truck from Ramon and Sandra Audelo. They had bought it new from a dealer and sold it to Plaintiff when it had over 12,500 miles on it and there were two years left on its five-year express manufacturer's warranty. Plaintiff's declaration states that in deciding to make his purchase, he relied on the remaining warranty coverage and the statement in the warranty booklet that it was transferable.

Plaintiff had trouble with the truck's engine and took it for numerous warranty repairs at Ford dealers, but he was never satisfied with the results. In 2013, he brought this action against Ford in a single cause of action under the Act, seeking restitution, damages and civil penalties. Among other relief, he sought enforcement of his demand for a refund or replacement of the truck, which Ford had denied to him. The complaint alleges that the used vehicle is a "consumer good" and he is a purchaser of it within the meaning of the Act. (§ 1791, subds. (a), (b).)[2]

_____

[2]    The Act's basic definition of "consumer goods" is "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." (§ 1791, subd. (a).) Amendments to

4

Ford answered the complaint and brought a summary judgment motion on the ground that Plaintiff could not demonstrate that he is a buyer within the meaning of the Act, because the private sellers, who had bought the vehicle new, were not engaged in the business of selling vehicles at retail to him. (§ 1791, subds. (b), (l).)

Plaintiff timely filed his opposition to the motion, and a week later, filed a motion for leave to amend the complaint, to plead an additional cause of action under Magnuson-Moss. In his opposition, Plaintiff relied on *Jensen, supra*, 35 Cal.App.4th 112, for the proposition that express warranties are fully enforceable by a "subsequent purchaser" for the effective duration of their coverage, and the statutory right to enforce the warranties under the Act had, as a matter of law, been transferred or assigned to him. (*Id*. at pp. 126-127.) Plaintiff provided an excerpt from the warranty guide he received with the vehicle, notifying consumers that "[i]f you bought a previously owned 2006-model vehicle, you are eligible for any remaining warranty coverages."

Plaintiff argues he should qualify as an assignee of the rights of the original purchasers under the Act, because his right of action under the Act is based on the express warranty and it thus arises out of Ford's legal obligations. (Com. Code, § 2313, subd. (1)(a), (b).) In an abundance of caution, Plaintiff sought leave to amend to plead the identical claims with reference to Magnuson-Moss, and he was attempting to consolidate the hearing on the two motions.

---

sections 1793.2 and 1793.22 have addressed the definition of a new motor vehicle more specifically. (See pt. III.B, *post*.)

In reply to the opposition, Ford argued that the language and history of the Act clearly apply to "retail" sales, not private sales. (*Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 749 (*Atkinson*) [a plaintiff suing under § 1794, subd. (a) of the Act must be a "buyer of consumer goods"].) Under section 1791, subdivision (b), a " 'buyer' " or " 'retail buyer' " is "any individual who buys consumer goods from a person engaged in the business of manufacturing, distributing, or selling consumer goods at retail." (*Ibid.*) The Act defines " 'retail seller,' " " 'seller,' " or " 'retailer '" as "any individual, partnership, corporation, association, or other legal relationship that engages in the business of selling or leasing consumer goods to retail buyers." (§ 1791, subd. (1).) Ford requested judicial notice of legislative history material that showed, in a letter to the Governor from the bill's sponsor, the statement of intent, "Non-retail sales of consumer goods, retail sales of non-consumer goods, and all non-retail commercial transactions will continue to be regulated by the Commercial Code and would not be affected by [the bill]."

Ford relied on *Martinez* to argue that a claim under the Act need not be based on ownership. The plaintiff in *Martinez* had lost her ownership and possession of a defective vehicle that she had purchased from a dealer, when it was repossessed, but the court held that statutory remedies under the Act were still available to her, since she had presented the vehicle for repairs in a timely manner. (*Martinez, supra,* 193 Cal.App.4th at p. 192.) Ford further argued that it was essential to coverage under the Act that a California dealer or distributor, not a private party, had sold the truck to Plaintiff. (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 493 (*Cummins*) [no standing under the Act for a purchaser buying vehicle outside of California].) Ford argued that

6

standing to sue under the Act should not be conflated with the transferability of the express warranty provisions, and opined that the latter provisions could supply Plaintiff with an adequate contractual remedy under Commercial Code section 2313. Additionally, Ford opposed the motion to amend as untimely and legally unsupported.

In its ruling, the trial court considered the pending motion to amend, and denied it without prejudice to Plaintiff filing a new action. In granting summary judgment, the court reasoned that since the sale was admittedly a private sale between citizens, Plaintiff did not qualify as a buyer under section 1791, subdivision (b), as he had not purchased from "a person engaged in the business of manufacturing, distributing, or selling consumer goods at retail." The court noted that the statute was unambiguous, there was no opposite conclusion to be reached about the circumstances of the sale, and Plaintiff lacked standing as a matter of law. This appeal followed.

## DISCUSSION

We first address the summary judgment issues, then turn to the question of whether the proposed amendment to the complaint should have been allowed.

## I

### *SUMMARY JUDGMENT STANDARDS*

A party moving for summary judgment bears an overall burden of persuasion that there is no triable issue of material fact and it is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 845.) The facts in this case are essentially undisputed, raising questions of law requiring statutory interpretation. Such

7

questions of statutory construction are reviewed de novo. (*Atkinson, supra*, 109 Cal.App.4th 739, 749-750; *Martinez*, *supra*, 193 Cal.App.4th 187, 192-193.)

As the moving defendant, Ford had the burden of showing that " 'one or more elements of the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto." (*Aguilar, supra*, 25 Cal.4th at p. 850; Code Civ. Proc., § 437c, subd. (p)(2).) Once the moving defendant meets its initial burden of production, the plaintiff has the burden to present evidence showing the existence of a triable issue of one or more material facts. (*Aguilar*, *supra*, at p. 850; Code Civ. Proc., § 437c, subd. (p)(2).)

With this procedural structure in mind, we reevaluate the legal significance and effect of the parties' arguments and evidence. (*Martinez, supra,* 193 Cal.App.4th at p. 192.)

## II

*AVAILABILITY OF RELIEF UNDER THE ACT; STATUTORY INTERPRETATION*

As a policy matter, Plaintiff contends he should qualify to sue under the Act as "any buyer" of "consumer goods" who is "damaged by a [seller's or manufacturer's] failure to comply with any obligation under this chapter or under an implied or express warranty . . . . " (§ 1794, subd. (a).) He argues, "Excluding an entire class of consumers from benefitting from a consumer protection statute is an absurd interpretation of the statute. The issue of subsequent purchasers is not addressed in the statute, nor has it been addressed by the appellate courts." Thus, he claims the transferred express warranty, with over two years left on it, automatically qualified him as a "subsequent purchaser"

8

plaintiff having standing to sue under the Act. (*Jensen, supra,* 35 Cal.App.4th at p. 126.) We examine these arguments in light of the definitions provided within the Act, interpretive case law, and the rules regarding assignability of choses in action, including this statutorily based one.[3]

## A. Statutory Construction Rules

"The Act 'is manifestly a remedial measure, intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action.' " (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990 (*Murillo*).) In construing statutes, the courts read their provisions in context, seeking to ascertain the intent of the Legislature and effectuate the purpose of the law. (*Cummins, supra*, 36 Cal.4th at p. 487; *Martinez, supra*, 193 Cal.App.4th 187, 192-193.) " 'We must look to the statute's words and give them "their usual and ordinary meaning." [Citation.] "The statute's plain meaning controls the court's interpretation unless its words are ambiguous." [Citations.] "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.]' [Citation.] We may not change the scope of a statute 'by reading into it language it does not contain or by reading out of it language it does. We may not rewrite the statute to conform to an assumed intention that does not appear in its language.' " (*Ibid.*)

---

[3]    A chose or thing in action is "a right to recover money or other personal property by a judicial proceeding," and it may be transferable. (§§ 953, 954.)

As described in *Cummins, supra*, 36 Cal.4th 478 at pages 484 to 486, the purpose of the Act was to address difficulties faced by some consumers in enforcing express warranties, by the creation of additional remedies, the " 'refund-or-replace' " provisions and implied warranties, for cases in which a purchaser's goods cannot be repaired to meet express warranty standards after a " 'reasonable number of attempts.' " (§ 1793.2, subd. (d)(1), (2).)[4]  The definitions in the Act serve as a mechanism for identifying those parties entitled to its protections.  (*Park City Services, Inc., supra,* 144 Cal.App.4th 295, 308-309 [Act is not applicable to a vehicle used for business purposes, if the business has no motor vehicles registered in California].)[5]

"The prerequisites for standing to assert statutorily-based causes of action are determined from the statutory language, as well as the underlying legislative intent and the purpose of the statute." (*Boorstein v. CBS Interactive, Inc.* (2013) 222 Cal.App.4th

---

[4]     A portion of the Act entitled the Tanner Consumer Protection Act (§ 1793.22) was enacted in 1992 (the Tanner Act), providing additional remedies for consumers who have warranty problems with new motor vehicles.  (*Park City Services, Inc. v. Ford Motor Co.* (2006) 144 Cal.App.4th 295, 305 (*Park City Services*).)  Since 2000, the Act's operative definition of "new motor vehicle" has been located in the Tanner Act, section 1793.22, subdivision (e)(2), and the definition also applies more generally to the Act's refund or replacement remedy in section 1793.2, subdivision (d).  In this context, we need not discuss the Tanner Act portion of the Act separately.  Section 1793.22 sets up a presumption about a "reasonable number of attempts" needed to repair a new vehicle and provides procedures for dispute resolution if repairs fail.

[5]     The pro-consumer remedies in the Act are in addition to those available under the Commercial Code.  (§ 1790.3; see *Martinez, supra,* 193 Cal.App.4th 187, 192-195.) Additional remedies are also available under the Unfair Practices Act, Business and Professions Code section 17000 et seq.  (§ 1790.4.)

456, 466; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, §§ 21-23, pp. 84-88; *id.* (2015 supp.) pp. 5-6.)

Whether statutory criteria have been met on undisputed facts is a question of law, subject to de novo review on appeal. (*Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951-952; *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.) This would include the statutory predicates for an award. (See *Carver v. Chevron, Inc.* (2002) 97 Cal.App.4th 132, 142 [distinguishing between issues of law on statutory attorney fee entitlement and discretionary determinations]; *Governing Board v. Mann* (1977) 18 Cal.3d 819, 829 [" 'statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time.' "].)

## B. Statutory Definitions

It is the plaintiff's burden of pleading and proving that the Act applies to his or her claims. (*Park City Services, supra*, 144 Cal.App.4th 295, 309.) For a plaintiff to prevail under the Act, a multi-part inquiry is required. (*Atkinson, supra,* 109 Cal.App.4th 739, 749-751.) First, under section 1791, subdivision (a),[6] was the purchase one of "consumer

---

6     For purposes of the Act, both its original definitions of "consumer goods," in section 1791, subdivision (a), and the amended "new motor vehicle" definitions in the Tanner Act (§ 1793.22) are relevant. As already noted, Plaintiff mainly relies on the generic definition of "consumer goods" in section 1791, subdivision (a): "[A]ny new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables. 'Consumer goods' shall include new and used assistive devices sold at retail." We note that if the Legislature had wanted to add used vehicles to this general definition in section 1791,

goods" at all? Second, under section 1791, subdivision (b), was the purchaser a "buyer" or "retail buyer," as an individual "who buys consumer goods *from a person engaged in the business of manufacturing, distributing or selling consumer goods at retail[?]*" (§ 1791, subd. (b); italics added.)[7] Third, did the plaintiff purchase goods from a statutory "retail seller," a person that "*engages in the business of selling or leasing consumer goods to retail buyers[?]*" (§ 1791, subd. (l); italics added.)[8]

Since the term "retail" appears in section 1791, subdivisions (a), (b) and (l), some further definition is required. In *Atkinson, supra*, 109 Cal.App.4th 739, 750, the court referred to Black's Law Dictionary's "retail" entry, " '[t]he sale of goods or commodities to ultimate consumers, as opposed to the sale for further distribution or processing.' " (Black's Law Dictionary (7th ed. 1999) at p. 1317.) "Furthermore, Merriam-Webster's Collegiate Dictionary (10th ed. 1999) at page 999 defines retail as 'to sell in small quantities directly to the ultimate consumer.' " (*Atkinson, supra*, at p. 750 [no updates necessary on these definitions].) Plaintiff is simply arguing he is an ultimate or end-use consumer, so he must qualify as a "retail" buyer of a single used truck (as opposed to a wholesale buyer of many trucks). However, the Act acknowledges there are different

---

subdivision (a) (as it did for "new and used assistive devices sold at retail"), it could have done so. (Also see discussion of § 1795.5 in pt. III.B, *post*.)

[7] In addition to defining a retail "buyer," section 1791, subdivision (b) defines the selling "person" as meaning "any individual, partnership, corporation, limited liability company, association, or other legal entity that engages in any of these businesses."

[8] Section 1791, subdivision (n) defines "sale" as meaning "either of the following: (1) The passing of title from the seller to the buyer for a price. (2) A consignment for sale."

ways to be a buyer, of different types of goods, and from whom.  Unless the seller is a retail seller within the meaning of the Act, Plaintiff was not a buyer under the Act.  (*Id*. at pp. 749-751.)  And unless new consumer goods were bought, the Act does not protect a consumer.  (§ 1791, subd. (a) [except for used assistive devices]; also see § 1795.5 [limited protections for used goods in a sale in which an express warranty is given]; pt. III.B, *post*.)

Case law under the Act examines its language and applies its definitions, turning to legislative intent where necessary to choose an interpretation, where the plain language can be interpreted in more than one way.  In *Park City Services, supra*, 144 Cal.App.4th 295, 306-307, the court observed that the Act contains some statutory provisions that are ambiguous, and that in some of its drafting efforts for the Act, the Legislature "was not necessarily writing with its sharpest pen."  There, it was deemed appropriate to look to legislative history for further interpretive guidance.  (*Ibid*.)

An equally important governing principle of statutory construction requires us to read the statutory provisions in context and in consideration of the entire Act.  (*Cummins, supra*, 36 Cal.4th at p. 487.)  Because of the overlapping language in section 1791, subdivisions (a), (b), and (l), we cannot read the definition of a buyer without also considering the definition of a seller, and the "consumer goods" sold must also fit into a statutory category, in order for any coverage by the Act to exist.  Since the cases interpreting the Act arise in many different configurations of goods, buyers, and sellers, their holdings must be analyzed individually.

13

It is well established that "[l]anguage used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered." (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 (*Ginns*).) We accordingly undertake to analyze each set of definitions with attention to the transactional facts of each case, about the type of goods sold and the identities of the buyer and seller. (See *Mui Ho v. Toyota Motor Corp.* (N.D. Cal. 2013) 931 F.Supp.2d 987, 992-993 [for action under the Act, pleading of breach of implied warranty must include when and from whom plaintiff purchased the vehicle; court would not assume, without facts, that purchase of vehicle fell within the Act's definitions; e.g., "retail seller."].)

## III

### *SCOPE OF COVERAGE OF THE ACT; APPLICATION OF RULES*

Although the Act should generally be construed in a manner that will bring its benefits into action (*Murillo, supra*, 17 Cal.4th 985, 990), the courts must initially consider "the structure and language of the existing statutory provisions." (*Cummins, supra*, 36 Cal.4th 478, 493.) "[W]e must interpret the language of the statute as it has been written, not as it might have been drafted had the Legislature contemplated and chosen to address, the specific concerns of [other groups]." (*Ibid.*) Although these statutory definitions are interdependent, we discuss them separately, to the extent possible.

A.  "Buyer" Definition, Section 1791, Subdivision (b)

With regard to the "buyer" definition, in *Cummins, supra*, 36 Cal.4th 478, 493, the court construed the provisions of section 1793.2, subdivision (d)(2) in context with other sections, and held the Act's special "refund or replace" provisions apply only to vehicles sold in California, not even to "California buyers who purchased their vehicle in another state." (*Cummins, supra,* at p. 493.)  The Act is not all encompassing for buyer protection.

In *Martinez, supra*, 193 Cal.App.4th 187, a California purchaser from a dealership, whose new car was repossessed after she became unable to afford additional repairs during the warranty period, was treated as falling within the Act's definition of a "buyer," in large part because the only seller was a dealer that continued to owe her warranty duties under the Act.  The court reasoned, "[N]owhere does the Act provide that the consumer must own or possess the vehicle at all times in order to avail himself or herself of these remedies.  All the Act requires of the buyer is that the buyer 'deliver [the] nonconforming goods to the manufacturer's service and repair facility' for the purpose of allowing the manufacturer a reasonable number of attempts to cure the problem. [Citations.]  Once this delivery occurs and the manufacturer fails to cure the problem, the 'manufacturer shall' replace the vehicle or reimburse (make restitution to) the buyer. (§§ 1794, subd. (b); 1793.2, subd. (d)(2).)  The Act says nothing about the buyer having to retain the vehicle after the manufacturer fails to comply with its obligations under its warranty and the Act.  If the Legislature intended to impose such a requirement, it could have easily included language to that effect.  It did not." (*Martinez, supra*, at p. 194.)  As

15

a matter of policy, " 'Interpretations that would significantly vitiate a manufacturer's incentive to comply with the Act should be avoided.' " (*Id.* at p. 195.)

In *Park City Services, supra*, 144 Cal.App.4th 295, 306-308, the court interpreted certain amendments to the Tanner Act (§ 1793.22) and the refund or replace provisions (§ 1793.2, subd. (d)), to identify which parties are entitled to the protection of the Act. Those facts included a business owner of a vehicle registered elsewhere (Texas). The court noted, "[E]ven though 'buyer' is still defined as an individual purchaser of goods for personal use, it must be deemed to include some corporate purchasers of new motor vehicles for business use—namely, those to whom 'not more than five motor vehicles are registered in this state.' " (*Park City Services, supra,* at p. 306.) The court also applied the definition of "new motor vehicle," in section 1793.22, subdivision (e)(2). Its conclusion was that the plaintiff was not entitled to coverage under the Act, even though the vehicle was "new," because the business did not have any vehicles at all that were registered for use in California. (*Park City Services, supra,* at pp. 308-309.)

B. "Goods" v. "Vehicle" Definitions: Section 1791, Subdivision (a), etc.

With regard to the basic "goods" definition under section 1791, subdivision (a), the Act has been amended since its enactment in 1970 to treat motor vehicles somewhat differently from other types of consumer goods. (*Cummins, supra*, 36 Cal.4th 478, 491.) In 1982, the Act was amended "to clarify its application to motor vehicles. Among other things, the following definition of 'new motor vehicle' was added" so that the Act applies to: " ' [A] new motor vehicle which is used or bought for use primarily for personal,

family, or household purposes . . . .' " (*Park City Services, supra*, 144 Cal.App.4th 295, 304.)

Since 2000, the operative definition of "new motor vehicle" is found in section 1793.22, subdivision (e)(2), and its definition of "new motor vehicle" applies to both subdivision (d) of section 1793.2 (the refund or replacement remedy) and the Tanner Act, section 1793.22. (*Park City Services, supra*, 144 Cal.App.4th 295, 305.) For each of these statutes, the Act applies as follows: "[A] 'new motor vehicle' means a new motor vehicle that is bought or used primarily for personal, family, or household purposes. 'New motor vehicle' also means a new motor vehicle with a gross vehicle weight under 10,000 pounds that is bought or used primarily for business purposes by a person . . . to which not more than five motor vehicles are registered in this state." (§ 1793.22, subd. (e)(2); see § 1793.2, subd. (d); *Park City Services, supra,* at p. 306.) "New motor vehicle" is further defined as including "a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty . . . ." (§ 1793.22, subd. (e)(2); *Jensen, supra,* 35 Cal.App.4th at p. 123.)

The Act treats new motor vehicles somewhat differently from used motor vehicles. In particular, the Act's definition of consumer goods is qualified by section 1795.5, entitled "Obligation of distributors or sellers of used goods." In this section, the Legislature created limited provisions for an express warranty to be sold and enforced for used goods (or used vehicles):

> "Notwithstanding the provisions of subdivision (a) of Section 1791 defining consumer goods to mean 'new' goods, the obligation of a distributor or retail seller of used consumer goods in a sale in which

17

an express warranty is given shall be the same as that imposed on manufacturers under this chapter [with some stated exceptions, involving who shall maintain sufficient service and repair facilities within this state, and the duration of any implied warranties]."

As cursorily noted in *Jensen, supra*, 35 Cal.App.4th 112, 124, footnote 2, "[d]efective used cars are addressed by a separate section of the Act (§ 1795.5.)" In that case, the court declined to apply section 1795.5 because the express warranty that was transferred to Jensen applied against the manufacturer, and the vehicle (a demonstrator) was being defined as new. (*Id.* at pp. 122, 127-128; see *Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246, 1257, 1260 (*Gavaldon*) [legislative history of section 1795.5, applicable to "used consumer goods in a sale in which an express warranty is given," shows that service contracts are treated differently in the Act from express warranties, for used car sales; disapproving *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139, 1158 (*Reveles*) for its statement that the protections of the Act applied to a used, "as is" vehicle, the same as if an express warranty had also existed].)

Also as noted in *Jensen, supra*, 35 Cal.App.4th 112, 125, the Vehicle Code definitions of new and used vehicles are not in conflict with the Act's definitions of "goods." (§ 1791, subd. (a).) As shown by the texts of Vehicle Code sections 430 ("new" vehicle is one in new condition that has never been sold and operated and registered) and 665 ("used" vehicle is one that has been sold or previously registered or operated), those definitions address different subject matters. The Vehicle Code focuses on "regulation of vehicle sales, registration, and operation," while the Act provides consumer protection through enforcement of express warranties. (*Jensen, supra*, 35

18

Cal.App.4th 112, 125.)[9]  All in all, the Act's definitions of buyer and seller are of greater assistance in this context of a used vehicle sale, where the truck was not the equivalent of a "new" vehicle, as in *Jensen, supra*, at page 126.

### C.  "Seller" Definition, Section 1791, Subdivision (l)

With regard to the Act's "seller" definition, the holding in *Jensen, supra*, 35 Cal.App.4th 112, hinged upon the circumstance that the subject vehicle had been leased to the plaintiff by the dealer, while it retained a balance on the manufacturer's new motor vehicle warranty.  The dealership's salesman told Jensen that the car had been used as a demonstrator for the dealership, and she would get the 36,000-mile warranty on top of the 7,000-plus miles already on it, and she received the warranty booklet.  Even though the vehicle had been obtained by the dealer at an out-of-state auction, with over 7,000 miles on it, the car was ruled to be included within the Act's definitions of a "new motor vehicle."  The court explained, "Section 1793.22, subdivision (e)(2), defines a 'new motor vehicle' as 'a new motor vehicle which is used or bought for use primarily for personal, family, or household purposes,' " and it also includes "a ' "demonstrator" ' or other vehicle sold with a manufacturer's new car warranty," by the dealer.  (*Jensen, supra,* at pp. 121-122.)  Jensen was therefore entitled to the protections of the Act because that more

---

9      Section 1791.2, subdivision (a)(1) defines "express warranty" as relevant here (a formal transferable new car warranty):  "A written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance."  This is not a case described in section 1791.2, subdivision (a)(2), involving a sample or model with promises that the whole of the goods conforms to such sample or model.

specific definition of the "consumer good" was controlling over the general provisions of section 1791, subdivision (a). It was likewise crucial to the holding in *Jensen* that the dealer fit the section 1791, subdivision (l) definition of a "seller" that "engages in the business of *selling or leasing* consumer goods to retail buyers," thus allowing application of the Act. (*Jensen, supra*, 35 Cal.App.4th at p. 126; italics added.)

In *Jensen*, the court's focus was mainly on the nature of the vehicle (a demonstrator), and on the seller (lessor), a dealer. Plaintiff cannot persuasively rely on the statement in *Jensen, supra*, 35 Cal.App.4th at page 126, that the protections of section 1793.22 may extend to all "cars sold with a balance remaining on the new motor vehicle warranty," in support of his claim that coverage for him is required by the Act's remedial purpose. (*Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 184.) In both *Jensen* and *Kwan*, it was a dealer that leased or sold the "new" vehicle at retail to each plaintiff-purchaser, who was seeking remedies against the dealer-manufacturer. In those cases, there were no facts involving a private sale, as here, even though a balance remained on each of the previous owners' transferable new motor vehicle warranty. The plaintiff in our case is not the same kind of "subsequent purchaser" who bought or leased an essentially "new" vehicle directly from a dealer, as discussed in *Jensen*, and he is not entitled to the same coverage by the Act. (*Jensen, supra,* at pp. 126-127.)

Moreover, in Plaintiff's case, the truck was not sold to him by a used car dealer who separately issued him, its purchaser, an express warranty pursuant to section 1795.5 (applicable to "used consumer goods in a sale in which an express warranty is given"). In

20

*Jensen, supra*, 35 Cal.App.4th at pages 126 to 128, the subsequent purchaser had leased from the dealer, not from a private party. The statements in *Jensen* about the Act's coverage for subsequent purchasers of vehicles with a balance remaining on the express warranty, must be read in light of the facts then before the court, and are limited in that respect. (*Ginns, supra*, 61 Cal.2d at p. 524, fn. 2.)

In *Jensen, supra*, 35 Cal.App.4th at page 126, the court bolstered its finding of Jensen's coverage by the Act (for her leased demonstrator car), by citing to California Code of Regulations, title 16, section 3396.1, subdivision (g) and its definition of "consumer": "any individual who buys or leases a new motor vehicle from a person (including any entity) engaged in the business of manufacturing, distributing, selling, or leasing new motor vehicles at retail. . . . *The term includes any individual to whom the vehicle is transferred during the duration of a written warranty or under applicable state law to enforce the obligations of the warranty*." (Italics added.) This regulatory section is found in title 16 (Prof. and Vocational Regs., Div. 33.1), for use in establishing an arbitration program for the "dispute resolution process" as that term is used in sections 1793.22, subdivisions (c) and (d) and 1794, subdivision (e). (Cal. Code Regs., tit. 16, § 3396.1, subd. (c).) We disagree with Plaintiff that this regulation adds to his showing of entitlement to rights under the Act for him, as a "consumer." The Act itself more specifically defines "consumer goods" and buyer and seller. Further, the Act defines "new motor vehicle," and the regulation itself refers to buying or leasing a "new motor vehicle from a person (including any entity) engaged in the business of manufacturing, distributing, selling, or leasing new motor vehicles at retail." (Cal. Code Regs., tit. 16,

21

§ 3396.1, subd. (g).)  In *Jensen*, the vehicle qualified as new because she acquired it from the dealer, at retail, under warranty.  (*Jensen, supra,* at pp. 119-120.)  Here, however, Plaintiff acquired the used truck from private parties.

Thus, the definition of "consumer" in California Code of Regulations, title 16, section 3396.1, subdivision (g) must be read not only for its reference to a buyer or transferee, but also in light of the Act's definitions of the vehicle itself, and the sellers that are transferring the vehicle.  (§ 1793.22, subd. (e)(2); § 1791, subd. (l).)  The nature of the transfer is crucial.  Where the seller is a retail seller engaged in the business of vehicle selling, the Act contemplates coverage.  Where the sellers are private parties who are not routinely engaged in such a "retail" business, the fact that a plaintiff bought a vehicle with its remaining written warranty rights is not alone dispositive under the Act.

Further attention to the policy statement in *Jensen, supra*, 35 Cal.App.4th 112, 121-122, is required here, that "the Legislature has systematically attempted to address warranty problems unique to motor vehicles, including transferability and mobility.  As this case demonstrates, there is a national wholesale market for previously owned cars, including those under manufacturers' warranty."  (*Ibid*.)  Although this is a true statement, "we must interpret the language of the statute as it has been written, not as it might have been drafted had the Legislature contemplated and chosen to address, the specific concerns of [other consumers]."  (*Cummins, supra*, 36 Cal.4th 478, 493.)  All these cases demonstrate that entitlement to the new car implied warranty protections of the Act is a fact intensive inquiry that cannot depend solely on lip service to the overall consumer protection policy of the Act.  A plain language reading of the relevant sections

22

of the Act does not support Plaintiff's interpretation of them, that he is a retail buyer from a retail seller, of a new consumer good.

We next address the closely related issue of a plaintiff's standing to seek remedies under the Act, and whether it is assignable through a chose in action. As will be shown, statutory standing requirements under the Act are distinguishable in nature from a contractual transfer of an express warranty.

IV

*ASSIGNMENT OF CHOSE IN ACTION; LIMITED SCOPE OF COVERAGE OF ACT*

Interpretation of these provisions in the Act is subject to enough doubt that we will proceed to the final step in statutory construction: applying "reason, practicality, and common sense to the language in question." (*Jensen, supra*, 35 Cal.App.4th 112, 126.) To the extent legislative history is any guide, the court in *Atkinson, supra*, 109 Cal.App.4th 739, noted that one of the sponsors of the Act wrote to the Governor that " 'the bill deals only with the retail sale of "consumer goods," a term which is rather narrowly defined. Non-retail sales of consumer goods, retail sales of non-consumer goods, and all non-retail commercial transactions will continue to be regulated by the Commercial Code and would not be affected by [the Act].' (Sen. Song, sponsor of Sen. Bill No. 272 (1970 Reg. Sess.), letter to Governor, Aug. 24, 1970.)" (*Atkinson, supra,* at p. 751.) Among the above stated choices, a private party used vehicle sale would seem to

23

be most like a "non-retail" transaction otherwise regulated by the Commercial Code's section 2313 (express warranty).[10]

Plaintiff asserts that the Act's statutory remedies were transferred to him along with the express warranty rights, stemming from the legal "obligation" Ford owed to him, within the meaning of section 954 ("A thing in action, arising out of the violation of a right of property, *or out of an obligation*, may be transferred by the owner"; italics added).  It is unclear if he views the original buyers' standing to assert statutory rights, under the Act, as some kind of covenant within the express warranty contract that was also intended to be transferred or assigned to him.

A cause of action for breach of contract is an assignable right.  (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 720, p. 805.)  The rules regarding transfers of a right to pursue a particular cause of action were summarized, in a different factual context, in *Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1259 (*Essex Ins. Co.*) [holding an insured's assignment of a cause of action against an insurance company for tortious breach of the covenant of good faith and fair dealing could support recovery of attorney fees as damages].  There, the Supreme Court relied on *Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822 (*Reichert*), for these general propositions, " ' "that the only causes or rights of action which are not transferable or

---

10    The terms of Commercial Code section 2313 state in relevant part:  "(1) Express warranties by the seller are created as follows:  [¶]  (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.  [¶]  (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

assignable in any sense are those which are founded upon wrongs of a purely personal nature, such as slander, assault and battery, negligent personal injuries . . . , malicious prosecution, and others of like nature.  All other demands, claims and rights of action whatever are generally held to be transferable." ' "  (*Id.* at p. 834; §§ 953, 954.)

Under Code of Civil Procedure section 367, "[e]very action must be prosecuted in the name of the real party in interest."  An assignee of an assignable chose in action has taken legal title and "may sue in his or her own name."  (4 Witkin, Cal. Procedure, *supra*, Pleading, § 127, pp. 195-196 [equitable doctrine underlies the real party in interest statute; the person having the right should be entitled to the remedy]; *id.* at § 120, p. 186.)  Any assignment "merely transfers the interest of the assignor.  The assignee 'stands in the shoes' of the assignor, taking his or her rights and remedies, subject to any defenses that the obligor has against the assignor prior to notice of the assignment."  (1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 735, p. 819; Code Civ. Proc., § 368.)

These principles recognize that some restrictions exist on a plaintiff's attempt to assign away rights to recover certain types of damages (e.g., in an insurance bad faith action; *Essex Ins. Co., supra*, 38 Cal.4th at p. 1260).  In such a case, any potential rights to recover damages for emotional distress or punitive damages are not assignable (because they are " ' " 'founded upon wrongs of a purely personal nature' " ' ").  (*Id.* at p. 1263, citing *Reichert, supra,* 68 Cal.2d at p. 834.)  However, the remainder of any such cause of action would remain assignable, if it were seeking other relief or remedies that are transferable.  (*Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 942; *Essex Ins. Co., supra*, at p. 1263.)

25

Even though assignability of a claim is the rule, highly personalized rights of recovery are not assignable. (*Reichert, supra,* 68 Cal.2d 822, 834; § 954.) Likewise, the Act specifies in great detail those types of buyers and sellers who are subject to its provisions, and only those buyers and sellers can properly assert its protections. Again, Plaintiff cannot properly rely on certain portions of California Code of Regulations, title 16, section 3396.1, subdivision (g), to define himself as a "consumer" for purposes of the Act (as italicized below). That regulation says a consumer is "any individual who buys or leases a new motor vehicle from a person (including any entity) engaged in the business of manufacturing, distributing, selling, or leasing new motor vehicles at retail . . . . *The term includes any individual to whom the vehicle is transferred during the duration of a written warranty or under applicable state law to enforce the obligations of the warranty*." (Cal. Code Regs., tit. 16, § 3396.1, subd. (g); italics added.) As a transferee, Plaintiff is still subject to the barrier that he purchased the used vehicle from private parties, even though its written warranty had not yet expired. Such a transfer of a written warranty did not effectively also transfer the original buyers' right to sue under the Act, because the Act defines standing to obtain the additional protections that it provides in a different manner, by restricting the types of sellers and goods, as well as buyers, that qualify for its protection. (See *Martinez, supra,* 193 Cal.App.4th at pp. 192-195.)

Specifically, the Act " 'regulates warranty terms, imposes service and repair obligations on manufacturers, distributors, and retailers who make express warranties, requires disclosure of specified information in express warranties, and *broadens a buyer's*

26

*remedies to include costs, attorney's fees, and civil penalties.* [Citations.] *It supplements, rather than supersedes, the provisions of the California Uniform Commercial Code*.' " (*Park City Services, supra*, 144 Cal.App.4th 295, 301-302.) Since the Act creates more and different statutory rights (e.g., implied warranties) than the express warranty contractual transfer could have conferred on Plaintiff, he would have to individually qualify under the Act's definitions of buyer and seller and consumer goods, to assert those additional enforcement remedies. (See *Cummins, supra*, 36 Cal.4th at p. 484.)

"We may not change the scope of a statute 'by reading into it language it does not contain or by reading out of it language it does. We may not rewrite the statute to conform to an assumed intention that does not appear in its language.' " (*Martinez, supra*, 193 Cal.App.4th 187, 193; *Cummins, supra*, 36 Cal.4th 478, 487.) Whatever statutory rights the private party sellers of the vehicle originally had under the Act, because they purchased it from a dealer, the Act does not provide that their statutory rights, or standing to pursue those rights, were somehow transferred to Plaintiff when the vehicle was privately sold to him, even when the express warranty protections were transferred. (*Martinez, supra*, at pp. 192-195 [ownership is not dispositive under the Act; a buyer from a dealer does not have to retain possession and ownership of the vehicle after the manufacturer fails to comply with its obligations under its warranty and the Act, to retain remedies under the Act].)

# V

## *AMENDMENT ISSUES*

It was not disputed that Plaintiff previously obtained warranty repairs under the remaining period of the express warranty that was issued to the original purchasers and transferred to him.  Strict adherence to privity rules for express warranty causes of action has not been required in the products liability context.  (See *Seely v. White Motor Co.* (1965) 63 Cal.2d 9, 14 ["Since there was an express warranty to plaintiff in the purchase order, no privity of contract was required."]; *Hauter v. Zogarts* (1975) 14 Cal.3d 104, 115, fn. 8 ["The fact that [plaintiff] is not in privity with defendants does not bar recovery.  Privity is not required for an action based upon an express warranty."]; *Cardinal Health 301, Inc. v. Tyco Electronics Corp.* (2008) 169 Cal.App.4th 116, 143-144 [no privity requirement for liability on an *express* warranty "because it is deemed fair to impose responsibility on one who makes affirmative claims as to the merits of the product, upon which the remote consumer presumably relies."].)

Plaintiff nevertheless contends that the grant of summary judgment in his case deprived him, as a purchaser of a used vehicle from private sellers, of any meaningful remedy for enforcement of this express warranty.  He candidly told the trial court that the benefits of a cause of action under the Act were superior to an ordinary express warranty claim, or to one brought under Magnuson-Moss, because the Act would potentially make available attorney fees and civil penalties, in addition to other relief.  (*Kanter v. Warner-Lambert Co.* (2002) 99 Cal.App.4th 780, 798 [state law applies in written breach of warranty claims under Magnuson-Moss].)  Further, there might be a danger that Ford

would remove his case to federal court, which could disadvantage him with respect to attorney fees, costs and other availability of relief.

Ford mainly opposed the motion for amendment on grounds of Plaintiff's delay in presenting it. (E.g., *Record v. Reason* (1999) 73 Cal.App.4th 472, 486; *Yee v. Mobilehome Park Rental Review Bd.* (1998) 62 Cal.App.4th 1409, 1428-1429.) However, Ford's respondent's brief admits, "Used car owners that obtain their vehicles via private sales and who comply with the warranty terms may seek to enforce the express warranty against the manufacturer by bringing an action under the Commercial Code based on breach of express warranty. Such an action does not require that the plaintiff purchase the vehicle from a retail seller." Ford is correct that the Act was meant to supplement, not supersede, the provisions of the Commercial Code. (§ 1790.3; *Park City Services, supra*, 144 Cal.App.4th 295, 301-302.)

An express warranty "is a contractual promise from the seller that the goods conform to the promise. If they do not, the buyer is entitled to recover the difference between the value of the goods accepted by the buyer and the value of the goods had they been as warranted." (*Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 830 (*Daugherty*).) In that case, the court held the plaintiff could not properly plead a state cause of action for breach of express warranty, which had expired, and without such a viable state claim, the Magnuson-Moss claim likewise failed. (*Daugherty, supra,* at pp. 832-833.) The court explained, "Magnuson-Moss 'calls for the application of state written and implied warranty law, not the creation of additional federal law,' except in specific instances in which it expressly prescribes a regulating

rule." (*Daugherty, supra,* at pp. 832-833.) Accordingly, that plaintiff's "failure to state a warranty claim under state law necessarily constituted a failure to state a claim under Magnuson-Moss." (*Daugherty, supra,* at p. 833.)

In our case, both Plaintiff and Ford acknowledge that some express warranty claims are viable in this action, whether under the Commercial Code or Magnuson-Moss. During the unexpired transferred warranty period, Plaintiff sought repairs for apparent defects, unlike in *Daugherty, supra,* 144 Cal.App.4th at pages 832 to 833 (where the warranty period had expired when claims were made). Ford makes no argument that the definitions in Magnuson-Moss, for the terms consumer product, consumer, or "supplier," would preclude any further action by Plaintiff.[11] Plaintiff expressed some doubts to the trial court about the cost effectiveness of that form of action, however, in view of the limited available remedies.

In any event, Ford made no showing of how it was meaningfully prejudiced by the delayed timing of the motion to amend the complaint. The trial court denied the motion to amend, without prejudice. Plaintiff admittedly has some viable cause of action under

---

[11] Magnuson-Moss (15 U.S.C. § 2301) provides these relevant definitions: "(1) The term 'consumer product' means any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes . . . . [¶] . . . [¶] (3) The term 'consumer' means a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract). [¶] (4) The term 'supplier' means any person engaged in the business of making a consumer product directly or indirectly available to consumers."

30

Magnuson-Moss, and this record supports a conclusion that the trial court abused its discretion in denying the motion to amend the current complaint. We will reverse the judgment and direct the trial court to permit a new motion to amend that reflects the unavailability of remedies under the Act, consistent with the views expressed in this opinion, but that may seek to set forth express warranty and Magnuson-Moss claims.

## DISPOSITION

The judgment is reversed with directions to allow further proceedings on any appropriate amendment of the complaint, which shall not include a cause of action under the Song-Beverly Consumer Warranty Act, although amendment may be sought on other grounds. Each party shall bear its own costs of appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


McINTYRE, J.


IRION, J.

31