# IN THE SUPREME COURT OF CALIFORNIA

EVERARDO RODRIGUEZ et al.,
Plaintiffs and Appellants,

v.

FCA US, LLC,
Defendant and Respondent.

S274625

Fourth Appellate District, Division Two
E073766

Riverside County Superior Court
RIC1807727

---

October 31, 2024

Justice Liu authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Kruger, Groban, Jenkins, and Evans concurred.

---

RODRIGUEZ v. FCA US, LLC

S274625


Opinion of the Court by Liu, J.


The Song-Beverly Consumer Warranty Act provides buyers of new motor vehicles with specific remedies when a vehicle turns out to be defective. (Civ. Code, § 1791 et seq.; hereafter the Act or the Song-Beverly Act; all undesignated statutory references are to the Civil Code.) Section 1793.2, subdivision (d)(2) gives new car buyers what is known as a refund-or-replace remedy: It requires manufacturers to "promptly replace" a defective new motor vehicle or "promptly make restitution" to the buyer when the manufacturer is "unable to service or repair a new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of Section 1793.22, to conform to the applicable express warranties after a reasonable number of attempts." These enhanced remedies under the Act for breach of express warranty are "distinct from" and "in addition to" remedies otherwise available in contract under the California Uniform Commercial Code. (*Niedermeier v. FCA US, LLC* (2024) 15 Cal.5th 792, 810, 811.)

Section 1793.22, subdivision (e)(2) defines "new motor vehicle" to include a new vehicle "bought or used primarily for personal" purposes as well as "a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty." Plaintiffs Everardo Rodriguez and Judith Arellano bought a two-year-old car with over 55,000 miles on it. The car had an unexpired manufacturer's new car warranty. The car repeatedly experienced engine problems despite

numerous repair attempts by defendant FCA US, LLC (FCA). Plaintiffs sued FCA to enforce the refund-or-replace provision (§ 1793.2, subd. (d)(2)), claiming that their car was a "new motor vehicle" because it was a "motor vehicle sold with a manufacturer's new car warranty" (§ 1793.22, subd. (e)(2)). FCA argued that the refund-or-replace remedy does not apply because plaintiffs' car was not a "new motor vehicle." The trial court and Court of Appeal agreed with FCA.

We conclude that a motor vehicle purchased with an unexpired manufacturer's new car warranty does not qualify as a "motor vehicle sold with a manufacturer's new car warranty" under section 1793.22, subdivision (e)(2)'s definition of "new motor vehicle" unless the new car warranty was issued with the sale. We affirm the judgment of the Court of Appeal.

## I.

In 2013, plaintiffs bought a 2011 Dodge Ram 2500 from Pacific Auto Center, a used car dealer in Fontana. At the time of sale, the vehicle was about two years old with 55,444 miles. The three-year/36,000-mile bumper-to-bumper warranty on the truck had expired, but the five-year/100,000-mile powertrain warranty issued by the vehicle's manufacturer, FCA, remained in effect. The powertrain warranty covered the vehicle's powertrain (engine, transmission, and drive system), diesel engine, emissions, and washer bottle, and it also provided a corrosion warranty.

While the powertrain warranty was still in effect, plaintiffs repeatedly experienced engine problems. In March 2014, plaintiffs took the vehicle to an authorized FCA facility for repair, but the engine issues persisted. They took the vehicle

for repair five additional times: in June 2014, in January 2015, twice in April 2015, and in May 2015.

In April 2018, plaintiffs sued FCA for (among other things) violating the Song-Beverly Act's refund-or-replace provision. They alleged that they had afforded FCA a reasonable number of attempts to repair the vehicle and that because FCA failed to repair it to conform to the applicable warranty, they were entitled to restitution of the purchase price or a replacement vehicle. FCA moved for summary judgment on the ground that the refund-or-replace remedy applies only to a "new motor vehicle" (§ 1793.2, subd. (d)(2)) and plaintiffs' car was not a "new motor vehicle" within the meaning of section 1793.22, subd. (e)(2). The trial court held a hearing and granted FCA's motion.

The Court of Appeal affirmed, holding that the phrase "other motor vehicle sold with a manufacturer's new car warranty" in section 1793.22, subdivision (e)(2) does not cover the sale of "previously owned vehicles with some balance remaining on the manufacturer's express warranty." (*Rodriguez v. FCA US, LLC* (2022) 77 Cal.App.5th 209, 215 (*Rodriguez*).) Based on the text of "the statutory provision, its place within the Act as a whole, and its legislative history" (*id.* at p. 225; see *id.* at pp. 217–223), the court construed the disputed phrase as "a catchall for sales of essentially new vehicles where the applicable warranty was *issued with* the sale" (*id.* at p. 215). The court distinguished the result in *Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112 (*Jensen*) while casting doubt on *Jensen*'s assertion that the phrase "other motor vehicle sold with a manufacturer's new car warranty" in section 1793.22, subdivision (e)(2) covers "cars sold with a balance remaining on the manufacturer's new motor

vehicle warranty." (*Jensen*, at p. 123; see *Rodriguez*, at pp. 223–224.)

We granted review.

## II.

The meaning of the phrase "other motor vehicle sold with a manufacturer's new car warranty" in section 1793.22, subdivision (e)(2)'s definition of a "new motor vehicle" is a matter of statutory construction, which we review de novo. (*Apple, Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.) " '[W]e first examine the statutory language, giving it a plain and commonsense meaning.' " (*Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966, 972.) Here, the phrase at issue, considered as a snippet by itself, is reasonably susceptible to either plaintiffs' interpretation (i.e., any vehicle sold with an unexpired manufacturer's new car warranty) or FCA's (i.e., a vehicle with a manufacturer's new car warranty that was issued with the sale). But "[w]e do not consider statutory language in isolation; instead, we examine the entire statute to construe the words in context." (*Ibid.*) When we examine the full text of the "new motor vehicle" definition in section 1793.22, subdivision (e)(2) and consider that definition in the broader context of the Song-Beverly Act, we are persuaded that FCA's reading is the better view.

## A.

The full definition of "new motor vehicle" reads: " 'New motor vehicle' means a new motor vehicle that is bought or used primarily for personal, family, or household purposes. 'New motor vehicle' also means a new motor vehicle with a gross vehicle weight under 10,000 pounds that is bought or used primarily for business purposes by a person, including a

partnership, limited liability company, corporation, association, or any other legal entity, to which not more than five motor vehicles are registered in this state. 'New motor vehicle' includes the chassis, chassis cab, and that portion of a motor home devoted to its propulsion, but does not include any portion designed, used, or maintained primarily for human habitation, a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty but does not include a motorcycle or a motor vehicle which is not registered under the Vehicle Code because it is to be operated or used exclusively off the highways. A demonstrator is a vehicle assigned by a dealer for the purpose of demonstrating qualities and characteristics common to vehicles of the same or similar model and type." (§ 1793.22, subd. (e)(2).)

This text makes clear that certain used cars — "a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty" — qualify as "new motor vehicles" for purposes of the statute. (§ 1793.22, subd. (e)(2).) The meaning of the disputed phrase is informed by the specific mention of dealer-owned vehicles and demonstrators as examples of a "motor vehicle sold with a manufacturer's new car warranty." (*Ibid.*) As the Court of Appeal explained, "What makes these vehicles unique is that even though they aren't technically new, manufacturers (or their dealer-representatives) treat them as such upon sale by providing the same type of manufacturer's warranty that accompany new cars." (*Rodriguez, supra*, 77 Cal.App.5th at p. 220.) In other words, they are vehicles for which a new car warranty "was *issued with* the sale." (*Id.* at p. 215.)

Plaintiffs take issue with the Court of Appeal's assertion that dealer-owned vehicles and demonstrators "come with full

express warranties." (*Rodriguez, supra,* 77 Cal.App.5th at p. 220.) They say those vehicles "*don't* necessarily come with a full manufacturer's new-car warranty" and instead "usually come with only a *balance* remaining" on the warranty after being driven "sometimes for thousands of miles." "Because dealer-owned vehicles and demonstrators are sold with only a balance of a new-car warranty remaining," they contend, "the Act's use of dealer-owned vehicles and demonstrators as examples of a vehicle 'sold with a [manufacturer's] new car warranty' *confirms* that *any other* vehicle sold with a balance of the original manufacturer warranty has been sold, for the Act's purposes, 'with a [manufacturer's new car] warranty,' too."

In response, FCA says dealer-owned vehicles and demonstrators are sold with warranties that are "typically coextensive with full warranties issued to new cars that were not demonstrators."

But we need not resolve whether such vehicles are or are not typically sold with "full" new car warranties. The key point, as FCA further explains, is that "demonstrators are not warranted prior to sale. In *every* case, the *first* customer to purchase or lease a demonstrator or dealer-owned vehicle receives a *new* warranty arising in *that* transaction, directly from the manufacturer . . . ." In other words, a warranty in this context is a guarantee made by the manufacturer to a retail buyer. Before a sale transaction, there is no such warranty to speak of; the manufacturer or its dealer representative owns the car. The sale of a dealer-owned vehicle or demonstrator to a retail buyer is what gives rise to a new car warranty. "Thus," as FCA says, "whether the manufacturer 'reinstates' the original warranty period, 'extends' the warranty's mileage, or simply sells the vehicle with a warranty *arising* in that first retail

transaction, demonstrators — *unlike preowned cars* — are always sold to the first retail buyer 'with a manufacturer's new car warranty.' "

Even if plaintiffs were correct that dealer-owned vehicles and demonstrators are typically vehicles with a balance remaining on a new car warranty, it is unclear why the Legislature would have singled out those cars, "which comprise a specific and narrow class of vehicles" (*Rodriguez*, *supra*, 77 Cal.App.5th at p. 220), as examples of the general category of used cars with unexpired warranties. Because dealer-owned vehicles and demonstrators are but a small fraction of the universe of used cars with unexpired new car warranties, it seems unlikely that the mere fact of having been sold with an unexpired warranty is the salient feature that the Legislature had in mind.

Like the Court of Appeal, we think that if the Legislature had intended to define " 'new motor vehicle' to include a potentially vast category of used cars" with unexpired new car warranties, "it would have been done so more clearly and explicitly than tucking it into a reference to demonstrators and dealer-owned vehicles." (*Rodriguez*, *supra*, 77 Cal.App.5th at p. 221; see *People v. Strong* (2022) 13 Cal.5th 698, 715 [no-elephants-in-mouseholes canon], citing *Whitman v. American Trucking Assns., Inc.* (2001) 531 U.S. 457, 468; *Ontario Community Foundations, Inc. v. State Bd. of Equalization* (1984) 35 Cal.3d 811, 822 ["Such a statutory construction has the tail wagging the dog"].) Indeed, although demonstrators and dealer-owned vehicles are not truly "new," the statutory definition of "new motor vehicle" makes an exception for them along with "other motor vehicle[s] sold with a manufacturer's new car warranty" (§ 1793.22, subd. (e)(2)), and the general rule

is that exceptions in a statute are to be narrowly construed. (See *Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 319; *National City v. Fritz* (1949) 33 Cal.2d 635, 636–637.)

By specifically mentioning dealer-owned vehicles and demonstrators, the Legislature highlighted vehicles for which a manufacturer's new car warranty arises upon sale to a retail buyer. Thus, the phrase "other motor vehicle sold with a manufacturer's new car warranty" is most naturally understood to mean other vehicles for which such a warranty is issued with the sale. (§ 1793.22, subd. (e)(2).) The phrase serves as "a catchall to ensure that manufacturers cannot evade liability under the Act by claiming a vehicle doesn't qualify as new because the dealership hadn't actually used it as a demonstrator." (*Rodriguez, supra,* 77 Cal.App.5th at p. 221.) For example, it would cover a car owned by a manufacturer or distributor for marketing purposes.

**B.**

This interpretation is bolstered by the overall framework of the Song-Beverly Act, which distinguishes between new and used products and calibrates manufacturers' and sellers' obligations accordingly.

Enacted in 1970, "[t]he Song-Beverly Act is a remedial statute designed to protect consumers who have purchased products covered by an express warranty." (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 798.) Under the Act, a manufacturer that sells "consumer goods" with an express warranty must maintain nearby repair facilities "to carry out the terms of those warranties." (§ 1793.2, subd. (a)(1)(A).) " 'Consumer goods'

means any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." (§ 1791, subd. (a).) For consumer goods (i.e., new products) that are defective, "if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity." (§ 1793.2, subd. (d)(1).)

The Act also requires consumer goods to be accompanied by the manufacturer's and retail seller's implied warranty of merchantability (§ 1792) and by the manufacturer's implied warranty of fitness where the manufacturer has reason to know the buyer is relying on its skill or judgment in furnishing a suitable good for a particular purpose (§ 1792.1). (See § 1791.1.) A consumer may sue the manufacturer for breach of these warranties. (§ 1791.1, subd. (d); cf. § 1792 [retail seller has "a right of indemnity" against the manufacturer for breach of implied warranty of merchantability].)

Separate from these provisions concerning new products, the Act includes a distinct section addressing used products. Section 1795.5 says: "Notwithstanding the provisions of subdivision (a) of Section 1791 defining consumer goods to mean 'new' goods, the obligation of a distributor or retail seller of used consumer goods in *a sale in which an express warranty is given* shall be the same as that imposed on manufacturers under this chapter," with certain exceptions. (Italics added.) In other words, "[s]ection 1795.5 provides express warranty protections

for used goods only where the entity selling the used product *issues an express warranty at the time of sale*." (*Rodriguez, supra*, 77 Cal.App.5th at p. 218.) In addition, the obligation to maintain adequate repair facilities lies with "the distributor or retail seller making express warranties with respect to used consumer goods (and not the original manufacturer, distributor, or retail seller making express warranties with respect to such goods when new)." (§ 1795.5, subd. (a).) Further, subdivision (c) of section 1795.5 provides for implied warranties of merchantability and fitness by the distributor or retail seller, with those warranties having a shorter duration than the manufacturer's implied warranties for new products. (See *Ruiz Nunez v. FCA US LLC* (2021) 61 Cal.App.5th 385, 399 (*Ruiz Nunez*) [under section 1795.5, "only distributors or sellers of *used* goods — not manufacturers of *new* goods — have implied warranty obligations in the sale of *used goods*"].)

Thus, the basic framework of the Song-Beverly Act distinguishes between new and used products and "provides similar remedies in the context of the sale of used goods, except that the manufacturer is generally off the hook." (*Kiluk v. Mercedes-Benz USA, LLC* (2019) 43 Cal.App.5th 334, 339 (*Kiluk*).) The Legislature added the motor vehicle provisions to the Act in 1982 and defined "new motor vehicle" to include any "new motor vehicle which is used or bought for use primarily for personal, family, or household purposes," but not "motorcycles, motorhomes, or off-road vehicles." (Stats. 1982, ch. 388, § 1, p. 1723.) In 1987, the Legislature established a refund-or-replace remedy specific to new motor vehicles with detailed requirements (Stats. 1987, ch. 1280, § 2, pp. 4557–4559; see § 1793.2, subd. (d)(2)) and amended the definition of "new motor vehicle" to include certain cars that are not entirely new, i.e., "a

dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty" (Stats. 1987, ch. 1280, § 2, p. 4561; see § 1793.22, subd. (e)(2)).

The Legislature has not otherwise adjusted the distinction between new and used cars in any manner that impacts our assessment of the question presented. In 1988, the Legislature amended the "new motor vehicle" definition to extend lemon law coverage to portions of a motorhome "devoted to its propulsion." (Stats. 1988, ch. 697, § 1, p. 2319; see Sen. Com. on Judiciary, Analysis of Assem. Bill No. 4513 (1987–1988 Reg. Sess.) as amended April 20, 1988, p. 2.) In 1998, the Legislature further amended the definition to include vehicles bought and used for commercial purposes, seeking to afford small businesses protection under the Act. (Stats. 1998, ch. 352, § 1, pp. 2777–2778; see Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1848 (1997–1998 Reg. Sess.) as amended May 7, 1998, p. 2.) Finally, the Legislature in 2000 added a limitation to the second sentence of the "new motor vehicle" definition, providing that it only applies to vehicles "with a gross vehicle weight under 10,000 pounds." (Stats. 2000, ch. 679, § 1, p. 4510.)

From this statutory context and history, we discern two points. First, in enacting and amending the Song-Beverly Act, the Legislature has maintained a distinction between "new" and "used" products and has specified the warranty protections applicable to each category. The Legislature has shown it knows how to legislate on "used" products (§ 1795.5), and it has employed clear language when it wants to make a "used" product subject to the warranty protections that apply to the product when new (see § 1791, subd. (a) [" 'Consumer goods' shall include new and used assistive devices sold at retail"]). In defining "new motor vehicle," section 1793.22, subdivision (e)(2)

does not mention "used" vehicles; the word "used" nowhere appears. This bolsters the inference that the phrase "other motor vehicle sold with a manufacturer's new car warranty" was not intended to cover any used car with an unexpired new car warranty.

Second, section 1795.5, which governs used goods, makes clear that the same warranty protections that consumers of new products have against manufacturers apply to consumers of used products against distributors or retail sellers "in a sale in which an express warranty is given." In other words, just as with new products, the Act's remedies for failure to repair a used product in conformity with an express warranty have applicability where the express warranty accompanies the sale of the product. For new products, liability extends to the manufacturer; for used products, liability extends to the distributor or retail seller and not to the manufacturer, at least where the manufacturer has not issued a new warranty or played a substantial role in the sale of a used good. (See *Rodriguez, supra*, 77 Cal.App.5th at p. 218; *Ruiz Nunez, supra*, 61 Cal.App.5th at p. 399; *Kiluk, supra*, 43 Cal.App.5th at pp. 339–340.) In both cases, the Act's protections are premised on an express warranty arising from the product's sale. (See *Rodriguez*, at p. 218 ["[A] hallmark of the Act is that its consumer protections apply against the party who sold the product to the buyer *and* issued the express warranty."].) Against this backdrop, it would be anomalous to construe "other motor vehicle sold with a manufacturer's new car warranty" (§ 1793.22, subd. (e)(2)) to include any used car sold by a distributor or retailer with a preexisting, unexpired manufacturer's warranty. If the Legislature had meant to

depart from the basic scheme and extend manufacturer liability in this way, again we think it would have spoken more clearly.

Finally, another relevant piece of statutory context is the requirement, enacted as part of the Motor Vehicle Warranty Adjustment Program (§ 1795.90 et seq.), that manufacturers provide notice of safety- or emissions-related recalls and establish procedures for reimbursing "the consumer" for necessary repairs. (§ 1795.92, subds. (d), (e).) Section 1795.90, subdivision (a) defines "consumer" as "any person to whom the motor vehicle is transferred during the duration of an express warranty applicable to that motor vehicle." As relevant here, this definition shows the kind of language that the Legislature has used to refer to transferred warranties as opposed to warranties arising from a sale. Plaintiffs are correct that section 1795.90 was enacted six years after the 1987 amendment that added the disputed phrase to the definition of "new motor vehicle." (Stats. 1993, ch. 814, § 1.) But the point is not that the Legislature was aware of section 1795.90 when it amended the "new motor vehicle" definition in 1987. The point is that the phrase "other motor vehicle sold with a manufacturer's new car warranty" (§ 1793.22, subd. (e)(2)) seems quite different, as a textual matter, from the phrase "motor vehicle . . . transferred during the duration of an express warranty applicable to that motor vehicle" (§ 1795.90, subd. (a)). Given this contrasting language, we find unpersuasive plaintiffs' suggestion that the former means the latter.

## C.

The legislative history of the 1987 amendment (Assem. Bill No. 2057 (1987–1988 Reg. Sess.) (Assembly Bill 2057)) that added "a dealer-owned vehicle and a 'demonstrator' or other

motor vehicle sold with a manufacturer's new car warranty" to the definition of "new motor vehicle" offers little insight on the question before us. (Stats. 1987, ch. 1280, § 2, p. 4561.) Materials related to Assembly Bill 2057 continuously note that the bill "amends and clarifies the lemon law" and "[a]mends the definition of a 'new motor vehicle' which is covered by the lemon law to include dealer-owned vehicles and demonstrator vehicles." (Assem. 3d reading analysis of Assem. Bill No. 2057 (1987–1988 Reg. Sess.) as amended June 11, 1987, pp. 2, 3; see also Conc. in Sen. Amends. to Assem. Bill No. 2057 (1987–1988 Reg. Sess.) as amended Sept. 4, 1987, pp. 1–3.)

Although plaintiffs observe that the legislative history "shows a consistent effort to *expand* the 'new motor vehicle' definition," the Legislature's incremental expansions do not indicate any intent to cover used vehicles with an unexpired manufacturer's new car warranty. Indeed, what we find most significant about the legislative history is that it makes no mention of used vehicles. Like the Court of Appeal, "we found no reference to used vehicles in any of the legislative materials regarding Assembly Bill Number 2057 (1987–1988 Reg. Sess.). One would assume that if the amendment proposed to expand manufacturers' liability under the Act to a large class of used vehicles, such a change to the status quo would warrant mention if not discussion." (*Rodriguez, supra*, 77 Cal.App.5th at p. 223.)

Nor do the views expressed by the Department of Consumer Affairs — an agency involved in both drafting and monitoring the impact of the original lemon law and this amendment — contribute much to resolve the question before us. (See Dept. Consumer Affairs, Enrolled Bill Rep. on Assem. Bill No. 2057 (1987–1988 Reg. Sess.) Sept. 25, 1987, p. 2.) According to the enrolled bill report, the added language was

necessary because " '[s]ome buyers [were] being denied the remedies under the lemon law because their vehicle [was] a "demonstrator" or "dealer-owned" car, *even though it was sold with a new car warranty.*' " (*Id.* at p. 3, italics added.) But this sentence simply restates the disputed phrase, without shedding further light on its meaning.

Plaintiffs also point to section 1795.8, a 2007 amendment that extends the Act's protections to members of the Armed Forces who were stationed in or residents of California at the time of purchase. Section 1795.8, subdivision (a) covers purchases of "a motor vehicle as defined in paragraph (2) of subdivision (e) of Section 1793.22, with a manufacturer's express warranty from a manufacturer who sells motor vehicles in this state or from an agent or representative of that manufacturer." Whatever the Legislature may have understood section 1793.22, subdivision (e)(2) to encompass when it enacted section 1795.8 in 2007, it does not aid our determination of what the Legislature understood section 1793.22, subdivision (e)(2) to encompass when it enacted that very provision 20 years earlier in 1987. (See *Coker v. JPMorgan Chase Bank, N.A.* (2016) 62 Cal.4th 667, 689–690; *id.* at p. 690 [" '[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation' because 'by definition [it] "could have had no effect on the [Legislature's] vote" ' "].)

### D.

Further, plaintiffs rely heavily on *Jensen*'s assertion that "cars sold with a balance remaining on the manufacturer's new motor vehicle warranty are included within [the Song-Beverly Act's] definition of 'new motor vehicle.' " (*Jensen, supra,* 35 Cal.App.4th at p. 123.) We agree with the Court of Appeal in

this case that *Jensen* is distinguishable because "*Jensen* involved a lease *by a manufacturer-affiliated dealer* who issued a *full new car warranty* along with the lease." (*Rodriguez, supra*, 77 Cal.App.5th at p. 223.) The plaintiff in *Jensen* had entered into a lease with a BMW-authorized dealership for a car with 7,565 miles on its odometer. (*Jensen*, at p. 119.) The dealer told Jensen that the car was a demonstrator, and as part of the lease agreement, the dealer gave her BMW's full 36,000-mile warranty "on top of the miles already on the car." (*Ibid.*) As it turned out, the car was not a demonstrator; it had been previously owned by the BMW Leasing Corporation. (*Id.* at p. 120.) When Jensen encountered repeated problems with the car's brakes despite multiple repair attempts, BMW took the position that the car was not a "new motor vehicle" because it was not in fact a demonstrator and thus the Song-Beverly Act's refund-or-replace remedy did not apply. (*Jensen*, at p. 122.) The Court of Appeal rejected BMW's position, and it was in this context — where BMW had issued a new car warranty with the lease — that the court found Jensen's car to qualify as a "new motor vehicle" under section 1793.22, subdivision (e)(2). (*Jensen*, at pp. 121–128.)

As the Court of Appeal in this case observed, "Given that [*Jensen*'s] facts included a car leased with a *full* manufacturer's warranty issued by the manufacturer's representative, the [*Jensen*] court was not asked to decide whether a used car with an unexpired warranty sold by a third party reseller qualifies as a 'new motor vehicle.' " (*Rodriguez, supra*, 77 Cal.App.5th at p. 224; see *Dagher v. Ford Motor Co.* (2015) 238 Cal.App.4th 905, 923 [*Jensen* "must be read in light of the facts then before the court, and [is] limited in that respect"].) The Court of Appeal here found *Jensen*'s result to be correct but its reasoning infirm

(*Rodriguez*, at p. 224), and it is not the only court to have questioned the broad statement in *Jensen* on which plaintiffs here rely. (See *Kiluk, supra,* 43 Cal.App.5th at p. 340, fn. 4 ["Would a car accompanied by a 20-year warranty still be a 'new motor vehicle' under the Song-Beverly Act on year 18? That would seem to follow from the holding in *Jensen*."].) We disapprove *Jensen v. BMW of North America, Inc., supra,* 35 Cal.App.4th 112 to the extent it is inconsistent with this opinion.

## E.

Finally, plaintiffs contend that their reading of the statute would avoid leaving "buyers of used cars with balances remaining on manufacturer new-car warranties . . . out to dry when stuck with lemons." "[F]rom a public policy standpoint," they say, "the onus should be on manufacturers to solicit the Legislature to strip certain vehicle buyers of the Act's protections, rather than force consumers to seek legislative assistance" to obtain those protections. For its part, FCA says the Legislature had good reason to distinguish demonstrators and dealer-own cars, which "are maintained professionally with a goal of keeping the vehicle in as-new condition in anticipation of a sale to the first consumer owner," from preowned cars, whose "various transfers of ownership" may result in "difficulties of proving what maintenance or misuse a prior owner may or may not be responsible for." Further, FCA argues that the unavailability of the refund-or-replace remedy for used cars with unexpired warranties still leaves those car owners with potential remedies under the California Uniform Commercial Code and the federal Magnuson-Moss Warranty Act. (See *Rodriguez, supra,* 77 Cal.App.5th at p. 225 ["the beneficiary of a transferrable express warranty can sue a

manufacturer for breach of an express warranty to repair defects under the California Uniform Commercial Code"].)

We express no view on the parties' policy arguments as to whether the Song-Beverly Act strikes an appropriate balance between protecting buyers of cars with unexpired new car warranties and cabining manufacturers' liability for the refund-or-replace remedy. Those arguments are best directed to the Legislature, which remains free to amend the definition of "new motor vehicle" to include used vehicles with a balance remaining on the manufacturer's new car warranty. "Our task is to give effect to the statute as we find it." (*Haggerty v. Thornton* (2024) 15 Cal.5th 729, 741.) For the reasons above, we hold that the phrase "other motor vehicle sold with a manufacturer's new car warranty" — considered in the context of the surrounding text of section 1793.22, subdivision (e)(2) and in the broader context of the Song-Beverly Act's provisions distinguishing between new and used goods — means a vehicle for which a manufacturer's new car warranty is issued with the sale.

## CONCLUSION

We affirm the judgment of the Court of Appeal.

LIU, J.

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Rodriguez v. FCA US, LLC

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 77 Cal.App.5th 209
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S274625
**Date Filed:**  October 31, 2024

---

**Court:**  Superior
**County:**  Riverside
**Judge:**  Jackson Lucky

---

**Counsel:**

Rosner, Barry & Babbitt, Hallen D. Rosner, Arlyn L. Escalante; Knight Law Group, Steve Mikhov, Roger R. Kirnos; Greines, Martin, Stein & Richland, Cynthia E. Tobisman, Joseph V. Bui and Alana H. Rotter for Plaintiffs and Appellants.

Barnes Law Firm and Stephen G. Barnes for Stephen G. Barnes as Amicus Curiae on behalf of Plaintiffs and Appellants.

Seth E. Mermin, David S. Nahmias and Leila Nasrolahi for the UC Berkeley Center for Consumer Law and Economic Justice, Consumers for Auto Reliability and Safety, Center for Auto Safety, Community Legal Services in East Palo Alto, Consumer Federation of America, National Consumer Law Center, National Consumers League, Open Door Legal, Public Counsel and Public Law Center as Amici Curiae on behalf of Plaintiffs and Appellants.

Anderson Law and Martin W. Anderson for Martin W. Anderson as Amicus Curiae on behalf of Plaintiffs and Appellants.

Erik Whitman, Alessandro G. Manno and Lara F. Rogers for Consumer Law Experts, P.C., as Amicus Curiae on behalf of Plaintiffs and Appellants.

The Arkin Law Firm and Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Appellants.

Clark Hill, David L. Brandon, Georges A. Haddad; Horvitz & Levy, Lisa Perrochet, John A. Taylor, Jr., and Shane H. McKenzie for Defendant and Respondent.

Shook Hardy & Bacon and Patrick J. Gregory for the Alliance for Automotive Innovation as Amicus Curiae on behalf of Defendant and Respondent.

Orrick, Herrington & Sutcliffe, Max Carter-Oberstone, Katherine M. Kopp and Christopher J. Cariello for the Chamber of Commerce of the United States of America and the Civil Justice Association of California as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Cynthia E. Tobisman
Greines, Martin, Stein & Richland LLP
6420 Wilshire Boulevard, Suite 1100
Los Angeles, CA 90048
(310) 859-7811

Shane H. McKenzie
Horvitz & Levy LLP
3601 West Olive Avenue, 8th Floor
Burbank, CA 91505
(818) 995-0800