Filed 2/27/25  Petrosyan v. BMW of North America CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ARAM PETROSYAN,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>BMW OF NORTH AMERICA, LLC, et al.,<br><br>     Defendants and Respondents. | B327267<br><br>Los Angeles County Super. Ct. No. 22BBCV00467 |

APPEAL from a judgment of the Superior Court of Los Angeles County, John J. Kralik, Judge. Affirmed.

The Bravo Law Firm and Nicholas A. Bravo for Plaintiff and Appellant.

The Law Office of Abtin Amir and Abtin Amir for Defendant and Respondent BMW of North America, LLC.

Manning, Leaver, Bruder & Berberich and Gary Prudian for Defendant and Respondent Finchey Corporation of California.

## INTRODUCTION

Aram Petrosyan sued BMW North America, LLC (BMW NA) and Finchey Corporation of California, dba Pacific BMW (Pacific BMW). He seeks relief for the defendants' alleged failure to satisfy their obligations under the Song-Beverly Consumer Warranty Act, Civil Code[1] section 1790 et seq. (Song-Beverly Act or the Act), concerning a used BMW convertible in his possession. An authorized BMW dealership originally leased the BMW to a non-party. Less than a year into the lease's three-year term, however, the non-party lessee assigned his interests under the lease to Petrosyan.

BMW NA, joined by Pacific BMW, demurred to Petrosyan's operative complaint, arguing he lacked standing to sue under the Song-Beverly Act.[2] The trial court sustained the demurrer without leave to amend and dismissed the complaint with prejudice. For the reasons discussed below, we affirm.

## BACKGROUND

### I.    Factual Background

On review of an order sustaining a demurrer, "[w]e accept as true all properly pleaded material factual allegations of the complaint and other relevant matters that are properly the subject of judicial notice . . . ." (*Glen Oaks Estates Homeowners Assn. v. Re/Max Premier Properties, Inc.* (2012) 203 Cal.App.4th 913, 919.) Accordingly, the following facts are taken from Petrosyan's operative complaint or documents the trial court

---

[1]     All undesignated statutory references are to the Civil Code.

[2]     Rather than filing an appellate brief on its own behalf, Pacific BMW joins BMW NA's respondent's brief.

judicially noticed. (See *ibid*; see also Evid. Code, § 459, subd. (a) [appellate courts must "take judicial notice of . . . each matter properly noticed by the trial court"].)

BMW NA manufactures, sells, warrants, and distributes BMW vehicles. Pacific BMW sells, leases, and repairs BMW vehicles.

In February 2020, non-party Gamer Aleksanian leased a new 2019 BMW convertible from BMW/Mini of Monrovia, another authorized BMW dealership, for a three-year term. The lease stated that, as a new car, the convertible was "subject to the standard manufacturer's new vehicle warranty." Upon acceptance of the lease's terms, BMW/Mini of Monrovia assigned its interests in the convertible and the lease to BMW Financial Services NA, LLC (BMW FS), a wholly owned subsidiary of BMW NA. The lease barred Aleksanian from assigning the lease or his rights thereunder without prior written approval from BMW/Mini of Monrovia or BMW FS.

Subsequently, Aleksanian assigned his interests in the lease to Petrosyan by way of a Lease Transfer Agreement. Signed by Petrosyan and Aleksanian in July and September 2020, respectively, the Lease Transfer Agreement identifies Aleksanian as the transferor and original lessee, and identifies Petrosyan as the transferee and new lessee. BMW FS consented to the Lease Transfer Agreement in October 2020. Per the agreement, Aleksanian was "relieve[d] . . . from [his] obligations under the [l]ease." Petrosyan, in turn, "accept[ed] all the rights, interest [*sic*] and obligations of [Aleksanian] as set forth in the [l]ease, including but not limited to, making payments as they become due . . . ." When Aleksanian executed the Lease Transfer Agreement, the vehicle had 10,427 miles on its odometer.

Petrosyan alleges that when he acquired the convertible, he "received written warranties and other express and implied warranties including, but not limited to, warranties from [BMW NA] and [Pacific BMW] that the [v]ehicle and its components would be free from all defects in material and workmanship; that the [v]ehicle would pass without objection in the trade under the contract description; that the [v]ehicle would be fit for the ordinary purposes for which it was intended; that the [v]ehicle would conform to the promises and affirmations of fact made; that [the] [d]efendants, and each of them, would perform any repairs, alignments, adjustments, and/or replacements of any parts necessary to ensure that the [v]ehicle was free from any defects in material and workmanship; that [the] [d]efendants, and each of them, would maintain the utility of the [v]ehicle for 4 years/50,000 miles and 4 years/50,000 miles for powertrain[ ] [and] restraint defects, and would conform the [v]ehicle to the applicable express warranties."

Since taking possession of the convertible, Petrosyan "has presented the vehicle on multiple occasions for warrantable non-conformities/defects, such as the [v]ehicle making unusual noises while driving, vibrate [*sic*] while driving, and/or leak [*sic*], and/or glass to pop out of place [*sic*], and/or illuminate [*sic*] check-engine lights substantially affecting the use, value and safety of the vehicle."

## II. Procedural Background

Seeking relief under the Song-Beverly Act, the operative first amended complaint asserts the following causes of action: (1) breach of implied warranty of merchantability (against BMW NA); (2) breach of express warranty of merchantability (against

4

BMW NA); and (3) violation of section 1793.2, subdivision (b) (against both defendants).

BMW NA demurred to each cause of action on the ground that Petrosyan failed to allege sufficient facts to constitute a cognizable cause of action. In support of its position, BMW NA primarily[3] argued Petrosyan "lacks standing to pursue any claims under [the] Song-Beverly [Act] because he obtained the vehicle used via a private transfer from a private individual, and did not purchase it new from a qualifying retail seller." It also noted "[n]o new warranty was issued to [Petrosyan] at the time of sale."

Although it previously filed an answer to the initial complaint, Pacific BMW joined BMW NA's demurrer. It agreed entirely with BMW NA's arguments and did not present any contentions on its own behalf.

---

3      Concerning Petrosyan's first cause of action, BMW NA also argued that he failed to allege sufficient facts to constitute a cognizable cause of action because "BMW NA is a distributor as defined by the Act specifically with regard to implied warranties of merchantability, which applies only to retail sellers and manufacturers, and therefore BMW NA cannot be held liable for the retail seller or manufacturer's implied warranty created by operation of law only as to those entities." Regarding Petrosyan's third cause of action, BMW NA argued its demurrer should be sustained because he "fail[ed] to allege that any one presentation for repair took longer than 30 days, or that any such delay was not caused by conditions beyond the control of BMW NA or its representatives, such as the COVID-19 [*sic*] and the global supply chain shortage experienced by all auto companies over the last few years." The trial court rejected both of these arguments and BMW NA has not renewed either one on appeal. We therefore deem these arguments forfeited. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4.)

Following a hearing, the trial court granted Pacific BMW's request to join BMW NA's demurrer, sustained the demurrer without leave to amend, and dismissed the complaint with prejudice. In support of its ruling, the trial court relied on *Dagher v. Ford Motor Co.* (2015) 238 Cal.App.4th 905 (*Dagher*) to reject Petrosyan's contention that he had standing to sue because "he has stepped into the shoes of the original lessee by assuming the rights, interests, and obligations of the original new car lease of the vehicle." The court also concluded that, "based on the terms of the [Song-Beverly Act], the subject vehicle itself is not 'new[,]'" and, therefore, Petrosyan was not a "buyer" of a "consumer good" with standing to pursue the remedies afforded under the Act. (See § 1791, subds. (a) & (b); see also § 1794, subd. (a).)

## DISCUSSION

### I. Legal Authorities

#### A. Standard of Review

"The function of a demurrer is to test whether, as a matter of law, the facts alleged in the complaint state a cause of action under any legal theory." (*Cardenas v. Horizon Senior Living, Inc.* (2022) 78 Cal.App.5th 1065, 1069.)

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to

sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.)

### B.  Statutory Background – Song-Beverly Act

"The Legislature enacted the Song-Beverly Act in 1970. [Citation.] In general, '[t]he [Song-Beverly] Act regulates warranty terms, imposes service and repair obligations on manufacturers, distributors, and retailers who make express warranties, requires disclosure of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney's fees, and civil penalties. [Citations.] It supplements, rather than supersedes, the provisions of the California Uniform Commercial Code. [Citations.]'" (*Park City Services, Inc. v. Ford Motor Co., Inc.* (2006) 144 Cal.App.4th 295, 301-302 (*Park City*).)

Sections 1793.2, subdivisions (b) and (d)(2) impose certain obligations upon the manufacturer and its representatives. Section 1793.2, subdivision (b) states, in relevant part, "[w]here . . . service and repair facilities are maintained in this state and service or repair of the goods is necessary because they do not conform with the applicable express warranties, service and repair shall be commenced within a reasonable time by the manufacturer or its representative in this state. Unless the buyer agrees in writing to the contrary, the goods shall be serviced or repaired so as to conform to the applicable warranties within 30 days."

Section 1793.2, subdivision (d)(2) provides, in pertinent part: "If the manufacturer or its representative in this state is

7

unable to service or repair a new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of Section 1793.22, to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer . . . . However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle."

At issue in this appeal is whether Petrosyan has standing to seek relief under the Act. "'Standing' is a party's right to make a legal claim and is a threshold issue to be resolved before reaching the merits of an action." (*Said v. Jegan* (2007) 146 Cal.App.4th 1375, 1382.) On this point, section 1794, subdivision (a) states: "Any *buyer of consumer goods* who is damaged by a failure to comply with any obligation under [the Song-Beverly Act] or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief." (Italics added.) Because the right to file suit is limited to "buyer[s] of consumer goods" (*ibid.*), the Act's definitions of those terms, and others, dictate whether an individual may seek relief under the Act. (*Dagher*, *supra*, 238 Cal.App.4th at p. 916 ["The definitions in the Act serve as a mechanism for identifying those parties entitled to its protections"].) "It is the plaintiff's burden of pleading and proving that the Act applies to his or her claims." (*Id.* at p. 917.)

As used in the Song-Beverly Act, "'[b]uyer' or 'retail buyer' means any individual who buys consumer goods from a person engaged in the business of manufacturing, distributing, or selling consumer goods at retail." (§ 1791, subd. (b).) "'Consumer goods' means any new product or part thereof that is used, bought, or

8

leased for use primarily for personal, family, or household purposes, except for clothing and consumables." (*Id.*, subd. (a).)

As noted above, section 1793.2, subdivision (d)(2) only applies to "new motor vehicle[s]." But, in the context of that statutory provision, "'[n]ew motor vehicle' includes . . . a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty . . . ." (§ 1793.22, subd. (e)(2).)

Although section 1794, subdivision (a) only authorizes "buyer[s] of consumer goods" to file suit under the Act, the Act's other provisions make clear that lessees of consumer goods are also entitled to its protections and likewise may redress violations of its provisions by filing suit. (See *Park City*, *supra*, 144 Cal.App.4th at p. 304 ["In 1984, the Song-Beverly Act was amended . . . so as to apply to leases as well as sales"].) Per section 1795.4, subdivision (b), "[t]he lessee of goods has the same rights under [the Act] against the manufacturer and any person making express warranties that the lessee would have had under [the Act] if the goods had been purchased by the lessee, and the manufacturer and any person making express warranties have the same duties and obligations under [the Act] with respect to the goods that such manufacturer and other person would have had under [the Act] if the goods had been sold to the lessee." Section 1793.2, subdivision (d)(2)(D) also clarifies: "Pursuant to section 1795.4, a buyer of a new motor vehicle shall also include a lessee of a new motor vehicle."

For purposes of evaluating whether an individual is a "lessee" within the meaning of the Song-Beverly Act, the following definitions apply. "'Lease' means any contract for the lease or bailment for the use of consumer goods by an individual,

9

for a term exceeding four months, primarily for personal, family, or household purposes . . . ." (§ 1791, subd. (g).) "'Lessee' means any individual who leases consumer goods under a lease." (*Id.*, subd. (h).) "'Lessor' means a person who regularly leases consumer goods under a lease." (*Id.*, subd. (i).)

## II.    Analysis

### A.    Whether Petrosyan Has Stated a Claim Under the Song-Beverly Act

We begin by acknowledging two important matters that are undisputed for purposes of this appeal. First, the parties do not dispute that Aleksanian, the convertible's original lessee, had standing to sue under the Act as a "buyer" of a "consumer good" and/or "new motor vehicle." (See §§ 1791, subds. (a) & (b); 1793.22, subd. (e)(2).) Moreover, the parties do not dispute that BMW FS, the assignee of BMW/Mini Monrovia's interests in the convertible and the lease, is a "lessor" within the meaning of section 1791, subdivision (i).[4]

With these matters in mind, we turn our attention to Petrosyan's contentions. Although not entirely clear, he appears to advance two arguments in support of his position that he has standing to seek relief under the Act. We address each in turn.

---

4      For the first time at oral argument, BMW NA asserted BMW FS is not a "lessor" as defined by the Act, as it is not in the business of leasing vehicles. Because this argument was not raised in BMW NA's briefs, we need not consider it. (See *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554 fn. 9 ["We do not consider arguments that are raised for the first time at oral argument"].)

### 1. Whether Petrosyan Inherited Aleksanian's Right to Sue under the Song-Beverly Act Through Assignment of the Lease

First, Petrosyan argues that because he acquired the vehicle through the Lease Transfer Assignment, to which BMW FS expressly consented, he "step[ped] into the shoes of the *original* lessee [(i.e., Aleksanian)] and thereby bec[a]me[ ] the *original lessee/'buyer'* of a *'new motor vehicle'*" under section 1791, subdivision (b) and section 1793.22, subdivision (e)(2), respectively. (Original italics.) In so doing, Petrosyan appears to contend that, by way of the Lease Transfer Agreement, he not only inherited Aleksanian's rights and responsibilities under the lease, but also Aleksanian's standing to file suit under the Song-Beverly Act. As discussed below, we disagree with Petrosyan's rationale on this point.

Although involving facts slightly different from those in this case, *Dagher*, *supra*, 238 Cal.App.4th 905, is instructive. There, the plaintiff bought a pre-owned truck manufactured by Ford Motor Company (Ford) in a private sale, which came with the transferable, unexpired express warranty issued to the private party sellers upon their purchase of the truck, new, from a Ford dealer. (*Id.* pp. 910-911.) The plaintiff later had trouble with the vehicle's engine and brought it in for warranty repairs numerous times. (*Id.* at p. 912.) Dissatisfied with the repair attempts, he sued Ford under the Song-Beverly Act. (*Ibid.*)

The trial court granted summary judgment in favor of Ford. (*Dagher*, *supra*, 238 Cal.App.4th at p. 914.) It reasoned that because "the sale was admittedly a private sale between citizens, [the] [p]laintiff did not qualify as a buyer under section 1791, subdivision (b), as he had not purchased from 'a person engaged

in the business of manufacturing, distributing, or selling consumer goods at retail.'" (*Ibid.*)

The appellate court affirmed the order granting Ford's motion for summary judgment. (*Dagher*, *supra*, 238 Cal.App.4th at p. 912.) On this point, its analysis proceeded in two parts.

First, the appellate court discussed, at length, the statutory definitions delineating when claims by the purchaser of a motor vehicle are covered by the Song-Beverly Act, as well as the prior caselaw applying and interpreting those definitions. (*Dagher*, *supra*, 238 Cal.App.4th at pp. 919-924.) Applying those definitions to the undisputed facts before it regarding the plaintiff's purchase of the vehicle, the appellate court concluded the plaintiff was "not entitled to . . . coverage by the Act" (*id.* at p. 922) as a "buyer" under section 1791, subdivision (b) because he "acquired the used truck from private parties" who were "not routinely engaged in . . . a 'retail' business . . . ." (*Id.* at p. 923.)

Having determined the plaintiff was not a "buyer" within the meaning of the Act based on the facts relating to his purchase of the vehicle, the appellate court considered his "assert[ion] that the Act's statutory remedies were transferred to him along with the express warranty rights . . . ." (*Dagher, supra*, 238 Cal.App.4th at p. 925.) It ultimately rejected this argument, holding: "Whatever statutory rights the private party sellers of the vehicle originally had under the Act, because they purchased it from a dealer, the Act does not provide that their statutory rights, or standing to pursue those rights, were somehow transferred to [the] [p]laintiff when the vehicle was privately sold to him, even when the express warranty protections were transferred." (*Id.* at p. 927.)

In support of its conclusion, the appellate court explained: "Even though assignability of a claim is the rule, highly personalized rights of recovery are not assignable. [Citation.] Likewise, the Act specifies in great detail those types of buyers and sellers who are subject to its provisions, and only those buyers and sellers can properly assert its protections." (*Dagher, supra*, 238 Cal.App.4th at p. 926.) Therefore, the court reasoned, the "transfer of a written warranty did not effectively also transfer the original buyers' right to sue under the Act, because the Act defines standing to obtain the additional protections that it provides in a different manner, by restricting the types of sellers and goods, as well as buyers, that qualify for its protection." (*Ibid.*) It concluded: "Since the Act creates more and different statutory rights (e.g., implied warranties) than the express warranty contractual transfer could have conferred on [the] [p]laintiff, he would have to individually qualify under the Act's definitions of buyer and seller and consumer goods, to assert those additional enforcement remedies." (*Ibid.*)

Petrosyan's argument parallels the one raised by the plaintiff in *Dagher* regarding the transferability of the right to sue under the Song-Beverly Act. Like the plaintiff in *Dagher*, Petrosyan suggests the right to seek relief under the Act flows from a document conferring certain rights and responsibilities upon an individual acquiring possession of a vehicle and, therefore, by transferring the document, the original document holder also transfers his or her standing to sue under the Act. (See *Dagher, supra*, 238 Cal.App.4th at p. 925.) In *Dagher*, the document in question was the express warranty on the truck, which was transferred to the plaintiff upon his purchase of the vehicle from private party sellers. (*Id.* at p. 912.) Here, the

13

document at issue is the lease of the convertible, originally held by Aleksanian and then transferred to Petrosyan by way of the Lease Transfer Agreement with BMW FS's consent.

As the appellate court observed in *Dagher*, however, the rights Petrosyan seeks to enforce are *statutory*. Consequently, those rights are separate and distinct from those given to him by the document granting him the right to possess the convertible (i.e., the lease). (See *Dagher*, *supra*, 238 Cal.App.4th 926 [noting "the Act creates more and different *statutory rights* . . . than the express warranty contractual transfer could have conferred on [the] [p]laintiff" (italics added)].) For this reason, Aleksanian's assignment of his interests in the lease to Petrosyan "did not effectively also transfer [his] right to sue under the Act." (*Ibid.*)

Thus, for the reasons stated above, we reject Petrosyan's argument that he has standing to sue under the Song-Beverly Act because, through the Lease Transfer Agreement, he "step[ped] into the shoes of the original lessee and thereby bec[a]me[ ] the original lessee/'buyer' of a 'new motor vehicle'" as those terms are defined in the Act. (Italics omitted.)

## 2. Whether Petrosyan Individually Satisfies the Song-Beverly Act's Standing Requirements

Although it again is not entirely clear, Petrosyan appears to argue that even if he has not inherited Aleksanian's standing to file suit under the Song-Beverly Act, he has standing in his own right because he is a "lessee" of a "new motor vehicle" from a "retail seller" as those terms are defined in the Act. In response, BMW NA essentially asserts Petrosyan lacks standing because: (1) Petrosyan's rights to the convertible "came directly from the prior lessee," rather than a dealer; and (2) at the time he

14

assumed the lease, the convertible was not a "new motor vehicle," as the car already had over 10,000 miles on its odometer and no new warranty was issued. For the reasons discussed below, we agree with BMW NA's second contention. We therefore need not, and do not, address its first argument.

For purposes of the Act, a "lessee" is "an individual who leases consumer goods under a lease." (§ 1791, subd. (h).) A "lease" is "any contract for the lease or bailment for the use of consumer goods by an individual, for a term exceeding four months, primarily for personal, family, or household purposes . . . ." (§ 1791, subd. (g).) Consequently, whether Petrosyan is entitled to file suit under the Song-Beverly Act as a "lessee" hinges upon whether the convertible was a "consumer good" when BMW FS consented to the Lease Transfer Agreement in October 2020. (See § 1791, subds. (g) & (h).) Resolution of this issue, in turn, requires us to determine whether the convertible was "new" when Petrosyan assumed the lease. (§ 1791, subd. (a) ["'Consumer goods' means any *new* product or part thereof" (italics added)].) To do so, we must ascertain whether the convertible was a "new motor vehicle" pursuant to 1793.22, subdivision (e)(2). (See *Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 270 ["[A] specific statutory provision relating to a particular subject controls over a more general provision"].)

When the parties filed their briefs in this appeal, California Courts of Appeal were divided on whether a vehicle with thousands of miles on its odometer, but sold or leased with an unexpired manufacturer's warranty, is a "new motor vehicle" under section 1793.22, subdivision (e)(2). Specifically, courts disagreed on how to interpret the following statutory language:

"'New motor vehicle' includes . . . a dealer-owned vehicle and a 'demonstrator' *or other motor vehicle sold with a manufacturer's new car warranty.*" (§ 1793.22, subd. (e)(2), italics added.)

The issue was first addressed in *Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112 (*Jensen*), disapproved by *Rodriguez v. FCA US LLC,* (2024) 17 Cal.5th 189, 205 (*Rodriguez II*). On this point, the Court of Appeal held: "We conclude the words of section 1793.22 are reasonably free from ambiguity and cars sold with a balance remaining on the manufacturer's new motor vehicle warranty are included within [the Song-Beverly Act's] definition of 'new motor vehicle.' The use of the word 'or' in the statute indicates 'demonstrator' and 'other motor vehicle' are intended as alternative or separate categories of 'new motor vehicle' if they are 'sold with a manufacturer's new car warranty.'" (*Jensen*, at p. 123.)

In contrast to the interpretation adopted in *Jensen*, the Court of Appeal in *Rodriguez v. FCA US, LLC* (2022) 77 Cal.App.5th 209, 222 (*Rodriguez I*), review granted July 13, 2022, S273143, held that, for purposes of section 1793.2, subdivision (e)(2), "the phrase 'other motor vehicle sold with a manufacturer's new car warranty' unambiguously refers to cars that come with a new or full express warranty." In support of its holding, the Court of Appeal relied primarily on the context in which the phrase occurs, observing "the phrase is preceded by 'a dealer-owned vehicle and demonstrator,' which comprise a specific and narrow class" of "*basically* new vehicles" because "they have never been previously sold to a consumer and they come with full express warranties." (*Rodriguez I*, at p. 220, original italics.) Therefore, the Court of Appeal explained: "Given this context, we think the most natural interpretation of the phrase 'other motor vehicle

sold with a manufacturer's new car warranty' is that it, too, refers to vehicles that have never been previously sold to a consumer and come with full express warranties." (*Ibid.*)

After oral argument in this case was held in August 2024, our Supreme Court issued its opinion in *Rodriguez II, supra*, 17 Cal.5th 189, which resolved the split in authority discussed above.[5] Ultimately, the Supreme Court agreed with the approach taken by the Court of Appeal in *Rodriguez I* and held: "[A] motor vehicle purchased with an unexpired manufacturer's new car warranty does not qualify as a 'motor vehicle sold with a manufacturer's new car warranty' under section 1793.22, subdivision (e)(2)'s definition of 'new motor vehicle' *unless the new car warranty was issued with the sale.*" (*Rodriguez II*, at p. 196, italics added.) In so doing, the Supreme Court "examin[ed] the full text of the 'new motor vehicle' definition in section 1793.22, subdivision (e)(2) and consider[ed] that definition in the broader context of the Song-Beverly Act . . . ." (*Rodriguez II,* at p. 197.) It also disapproved *Jensen* to the extent that opinion held "'cars sold with a balance remaining on the manufacturer's new motor vehicle warranty are included within [the Song-Beverly Act's] definition of "new motor vehicle.'''" (*Rodriguez II*, at pp. 204-205, quoting *Jensen, supra*, 35 Cal.App.4th at p. 123.)

Applying the holding of *Rodriguez II* to the facts in this case, we conclude the trial court did not err by sustaining BMW

_____

5    On October 18, 2024, we vacated submission in this matter and stayed the case to permit consideration of the Supreme Court's then forthcoming opinion in *Rodriguez II*. The stay expired on the date the *Rodriguez II* opinion became final, at which time the parties were invited to file supplemental briefs addressing the opinion's impact on this case. Only BMW NA filed a supplemental brief.

NA's demurrer. Upon assuming Aleksanian's rights and responsibilities under the lease by way of the Lease Transfer Agreement, Petrosyan agreed to lease the convertible pursuant to the lease's original terms, and until its expiration in February 2022, with BMW FS's express consent. At the time Aleksanian agreed to the transfer, the convertible had 10,427 miles on its odometer. Consequently, according to Petrosyan, the vehicle was still subject to written warranties previously issued by BMW NA and Pacific BMW. Although Petrosyan alleges he acquired the convertible subject to these unexpired warranties, he does not allege – and the record does not reflect – that a *new* warranty of any sort was issued in the process of the lease's transfer. Indeed, in his opening brief, he concedes "no new manufacturer [certified pre-owned] or used car warranty [was] issued, and only the balance of the new car warranty remains . . . ." Under these circumstances, we conclude Petrosyan was not the "lessee" of a "new motor vehicle" within the meaning of the Song-Beverly Act and, therefore, did not have standing to sue under its provisions. (See *Rodriguez II*, *supra*, 17 Cal.5th at p. 196; see also §§ 1791, subd. (h); 1794, subd. (a); 1795.4, subd. (b); 1793.22, subd. (e)(2).)

### B.     Whether Petrosyan Has Shown the Complaint States a Claim Under Other Legal Theories

Apparently anticipating our conclusion that he lacks standing to sue under the Song-Beverly Act, Petrosyan contends the demurrer should have been overruled because the operative complaint alleges "facts sufficient to state a claim under Commercial Code sections 2313, 2314, and/or 2601 et seq., and/or 2701 et seq., and/or the Magnuson Moss Warranty Act (15 U.S.C. § 2301 et seq.)" For the reasons discussed below, we reject his conclusory argument as forfeited.

"'[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.]' [Citation.] 'This means that an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim. The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record. [Citations.]'" (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 619-620 (*L.O.*).) "'It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness.'" (*Id.* at p. 620.) "Consequently, '[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited]. [Citation].'" (*Ibid.*)

In support of his contention above, Petrosyan simply names the statutes under which he believes he has stated a valid cause of action. He does not analyze any of the cited statutory provisions. Nor does he explain how the complaint's factual allegations satisfy the applicable statutory requirements to state a cognizable claim thereunder. Instead, Petrosyan improperly implies that we should "'search the record and the law books to test his claim[s].'" (*L.O.*, *supra*, 96 Cal.App.5th at p. 619.) Because Petrosyan "has failed to provide any adequate legal analysis . . . of [the cited Commercial Code provisions or the Magnuson Moss Warranty Act] and the potentially complex legal analysis necessary to determine whether [he] has stated a cause of action under any of these [statutes]," we deem his argument

forfeited and decline to consider it further. (*Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482.)

## C. Whether Leave to Amend Should Have Been Granted

Finally, Petrosyan argues that the trial court abused its discretion by declining to grant him leave to amend. He asserts: "[I]f the [trial] court believed . . . that another non-[Song-Beverly Act] cause of action lurked but was perhaps not sufficiently plead [*sic*], the court should have granted leave [to amend]." We reject this argument for two reasons.

First, Petrosyan has forfeited his contention. At the hearing on BMW NA's demurrer, the trial court stated it was inclined to grant Petrosyan leave to amend to plead additional factual allegations or assert causes of action beyond those based on the Song-Beverly Act. Petrosyan's counsel did not accept the court's offer for leave to amend, arguing the issues were adequately framed for appellate review based on the allegations set forth in the operative complaint. Where, as here, a plaintiff "expressly decline[s] an opportunity to amend" the complaint, the plaintiff "forfeit[s] [a] claim of error based on the denial of leave to amend . . . ." (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 861.)

Second, Petrosyan's argument fails because it erroneously assumes the trial court was responsible for ascertaining whether the defects in his complaint could be cured by amendment. It is well-settled "[t]he burden of showing that a reasonable possibility exists that amendment can cure the defects [in the complaint] remains with the plaintiff; neither the trial court nor this court will rewrite a complaint." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44.) Petrosyan has made no

effort to satisfy this burden. He does not "clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it." (*Id.* at p. 43.) Nor does Petrosyan "set forth factual allegations that sufficiently state all required elements of that cause of action." (*Ibid.*) Thus, because he "offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained [BMW NA's] demurrer without leave to amend." (*Id.* at p. 44.)

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CURREY, P. J.

We concur:

MORI, J.

ZUKIN, J.

21